PRACTICE MANAGEMENT LTD. *et al.*, Plaintiffs-Appellants, v. HAROLD S. SCHWARTZ *et al.*, Defendants-Appellees.

First District (5th Division) Nos. 1—92—3996, 1—93—0226 cons.

Opinion filed December 10, 1993.

Much, Shelist, Freed, Denenberg & Ament, P.C., of Chicago (Sharon Swarsensky Bilow and Joanne A. Sarasin, of counsel), for appellants.

Jenner & Block, of Chicago (Benjamin Beiler, William S. Von Hoene, Jr., and Kent Maynard, Jr., of counsel), for appellees.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiffs Phillip Hirsch and Practice Management Ltd. (PML) appeal from the entry of summary judgment in their suit against defendants Harold S. Schwartz and Mark Glazer and from the denial of plaintiffs' motion to amend their complaint. Hirsch, a nonphysician, is sole shareholder of plaintiff PML and the owner of Weisser Optical, which employed licensed, nonphysician optometrists, providing optometric services throughout the Chicago area.

Defendants Schwartz and Glazer are medical doctors licensed to practice ophthalmology in the State of Illinois. In 1983, Drs. Schwartz and Glazer formed Chicagoland Cataract Consultants (CCC or MedCo) and Ophthalmology Practitioners, Inc. (OPI). Drs. Schwartz and Glazer operated their medical practice through CCC.

According to defendants, sometime in 1983, Hirsch approached Dr. Schwartz and proposed an arrangement under which nonphysician optometrists employed by Hirsch's company, Weisser Optical, would refer patients requiring ophthalmological services to Dr. Schwartz. When Dr. Schwartz expressed reservations about the legality of such an arrangement, Hirsch obtained an opinion letter from his lawyer. This opinion letter, dated April 24, 1984, indicated that Schwartz had requested an opinion as to whether existing laws prohibit a relationship where the optometrist refers patients to ophthalmologists and "also becomes a member of the team which services the patient by out-patient surgical procedures where they are indicated." In the letter, the attorney stated that he was asked to review whether, under this arrangement, the optometrist would be engaging in the practice of medicine or whether the optometrist and ophthalmologist would be engaging in any illegal fee splitting. Although the letter explained that, under the arrangement, the optometrists would not be engaging in the practice of medicine, the letter contained no analysis and expressed no opinion regarding whether the arrangement involved illegal fee splitting.

On June 30, 1984, Hirsch and PML entered into a partnership agreement with Drs. Schwartz and Glazer and OPI, forming a partnership called Ophthalmology Management (OM). The arrangement, which was referred to as the "Concept," was defined as:

> "the entire business concept involving the referrals from, services provided by, education provided to and fees collected by [CCC] for and on behalf of the optometrists (or any other person standing or potentially standing in a relationship to a medical doctor which is similar to the relationship to be developed between an optometrist and an ophthalmologist as more fully discussed in the legal opinion referred to below). The Concept directly relates to the operation and management of any medical practice, all as more fully described in the legal opinion of Freeman, Atkins & Colman *** ."

Under the partnership agreement, the partners were to split OM's net profit on a 50-50 basis.

The parties also executed a management agreement, under which OM was to render certain "management, administrative and other business services functions to [CCC]" and to "attempt to enhance [CCC's] revenues through the use of the Concept." In exchange, CCC was required to pay OM a management fee, defined as CCC's gross receipts for that fiscal period, less the sum of the aggregate of all salary amounts bonus amounts and professional liability insurance premiums. The management agreement defined gross receipts as the money received by CCC with respect to the practice, and defined "practice" as "the rendition of ophthalmological services to patients of [CCC] and to all remunerative medical activities of Schwartz and Glazer."

In 1985, the United States Attorney's Office for the Northern District of Illinois commenced an investigation into the arrangement between plaintiffs and defendants and concluded that it was illegal. According to Schwartz and Glazer, the United States Attorney declined to prosecute because the doctors had relied on the opinion of Hirsch's attorney in entering into the agreement.

Schwartz and Glazer terminated the OM partnership in 1985. In 1989, plaintiffs filed suit against defendants, seeking an accounting and alleging that Drs. Schwartz and Glazer had breached their fiduciary duty to the OM partnership. In 1991, defendants filed a motion for summary judgment, arguing that the partnership constituted an illegal fee-splitting arrangement between physicians and nonphysicians and was void under Illinois law. After a hearing on the motion in 1992, the trial court held that the arrangement between the parties constituted an illegal sharing of fees between physicians and

nonphysicians. The court therefore dismissed plaintiffs' action with prejudice.

In November 1992 plaintiffs sought leave to substitute counsel and to file an amended complaint. Three days later, while the motion was still pending, plaintiffs filed a notice of appeal as to the court's order granting defendants' motion for summary judgment.

In December 1992 the trial court denied plaintiffs' motion for leave to file an amended complaint. Plaintiffs then filed an appeal as to that ruling. This court consolidated plaintiffs' two appeals.

The issues on appeal are: (1) whether the trial court erred in finding that the Illinois Medical Practice Act of 1987 (225 ILCS 60/22) and public policy prohibited the arrangement between the non-physician plaintiffs and the physician defendants; (2) whether the trial court erred in holding that plaintiffs were precluded from recovery in *quantum meruit*; and (3) whether the trial court erred in refusing to grant plaintiffs leave to file an amended complaint.

■ Our analysis of these issues begins with a review of the pertinent section of the Illinois Medical Practice Act of 1987 (Act) (225 ILCS 60/22(A)(14)(West 1992)), which provides:

> "The Department may revoke, suspend, place on probationary status, or take any other disciplinary action as the Department may deem proper with regard to the license or visiting professor permit of any person issued under this Act to practice medicine or to treat human ailments without the use of drugs and without operative surgery upon any of the following grounds:
>
> * * *
>
> 14. Dividing with anyone other than physicians with whom the licensee practices in a partnership, Professional Association or Medical or Professional Corporation any fee, commission, rebate or other form of compensation for any professional service not actually and personally rendered."

The Act does permit physicians who practice within the framework of a partnership, corporation or association to share fees. (225 ILCS 60/22(A)(14)(West 1992).) It is also permissible under the Act for two or more physicians who concurrently render patient care to share fees, provided the patient has full knowledge of the fee division, and the division is made in proportion to the services performed, and responsibility is assumed by each. 225 ILCS 60/22(A)(14)(West 1992).

■ The fact that the statute prohibits fee splitting in connection with patient referrals is well settled. (*E&B Marketing Enterprises, Inc. v. Ryan* (1991), 209 Ill. App. 3d 626, 568 N.E.2d 339 (illegal fee splitting where in return for marketing the defendant doctor's services, plaintiff was to receive a consulting fee of 10% on all billings

collected by the defendant in connection with such referral).) Not only does fee splitting violate the Act, but it also violates public policy. One danger of fee-splitting arrangements is that they may motivate nonprofessionals to recommend the services of a particular professional out of self-interest, and not because of the competence of the professional. Such arrangements are against public policy because the public is best served by recommendations uninfluenced by financial considerations. *(O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, 537 N.E.2d 730.) An additional danger inherent in fee-splitting arrangements is that:

> "a doctor, knowing that he had to split his fees with one who did not render medical services, might be hesitant to provide proper services to a patient. Conversely, unneeded treatment might be rendered just because of the need to split fees." *E&B Marketing Enterprises, Inc. v. Ryan* (1991), 209 Ill. App. 3d 626, 630, 568 N.E.2d 339.

■ Plaintiffs initially maintain that the arrangement at issue here does not violate Illinois law, since the Act only addresses fee splitting in the context of patient referrals. In support of their argument, plaintiffs cite to *Practice Management Associates, Inc. v. Orman* (Fla. Dist. Ct. App. 1993), 614 So. 2d 1135, a Florida Appellate Court case interpreting the Illinois Act. In *Orman*, the defendant chiropractors, licensed and practicing in Illinois, entered into an agreement with plaintiff, a Florida corporation, under which the corporation was to provide "advice, education, and counseling to increase the growth and profits of the chiropractic practices." (614 So. 2d at 1136.) In return for plaintiff's services, defendants were obligated to pay 10% of their gross income to the plaintiff, with a guaranteed payment to plaintiff of at least $75 per week.

When the defendants defaulted on their payments, plaintiff brought suit for breach of contract. The defendants asserted that the agreement was illegal and void under Illinois law because it constituted prohibited fee splitting. The court disagreed, finding that the intent of the Medical Practice Act is to prohibit fee splitting in the context of patient referrals and neither the Act nor public policy prohibits payments by physicians of a percentage of their profits to a nonprofessional in exchange for marketing and management services provided by that nonprofessional.

We, however, are more persuaded by our appellate court's decision in *Lieberman & Kraff v. Desnick* (1993), 244 Ill. App. 3d 341, 614 N.E.2d 379. There, two ophthalmologists, Liebermann and Kraff, contracted to sell their ophthalmology practice to Desnick in exchange for 10% of Desnick's gross billings during the first 10 years

after the sale, and 5% of gross billings for the following 10 years. Desnick made the required payments for five years after the sale, and then ceased making payments to Leibermann and Kraff. Liebermann and Kraff sued Desnick for breach of contract.

The court granted defendant's motion for summary judgment, finding that the Act prohibits this type of fee sharing. The court stated that although the Act clearly prohibits agreements which can be characterized as fee-splitting agreements, the reach of the statute is not limited to fee splitting, but rather, prohibits all other fee-sharing arrangements not specifically authorized by the Act. In addition, the *Desnick* court expressly disagreed with *Orman*, stating that "[t]he language of our statute is very broad. Nothing in the statute indicates an intent to limit the prohibition on fee sharing to a referral context." *Desnick*, 244 Ill. App. 3d at 347.

Plaintiffs in the instant case claim that *Desnick* is inapplicable since in the instant case, plaintiffs are seeking compensation for performing legitimate services, having nothing to do with the sale of a practice or referral of patients. Plaintiffs' argument is disingenuous, however, since our careful review of the agreements at issue here leaves no doubt that patient referrals played a significant role in the arrangement between the parties. Under the management agreement, plaintiffs were to "attempt to enhance Medco's revenues through the use of the Concept." The Concept was defined as "the entire business concept involving *referrals from \*\*\** and fees collected by [CCC] for and on behalf of the optometrists." (Emphasis added.) Thus, under the Concept, Hirsch would refer patients of the optometrists employed by his company, Weisser Optical, to Schwartz and Glazer's ophthalmology practice, for medical services which only a licensed physician could provide. In addition, the opinion letter written by Hirsch's attorney discusses patient referrals.

Although the arrangement at issue here also involves the performance of some legitimate management services, the method of payment for these services is improper. Plaintiffs, however, claim that if we find that the arrangement here constitutes illegal fee sharing, then virtually every payment made by a doctor for such things as supplies, electricity or nurses would constitute fee sharing since that payment would ultimately come out of money derived from patient fees. Plaintiffs' argument is not compelling, however, since generally, payments made to the electric company or members of a doctor's support staff do not depend on how much money the doctor earns. Such payments must be made regardless of whether the doctor makes or loses money that month. Under the agreement at issue here, plaintiffs were to be compensated through a percentage of

the net profits generated by the defendant physicians. If CCC's patient billings failed to exceed the sum of salary, bonuses, and malpractice insurance premiums, plaintiffs would receive no compensation. However, if the patient billings exceeded the sum of the salary, bonuses and malpractice insurance, plaintiffs would receive a 50% share. This is improper fee sharing regardless of the fact that legitimate management services may have been performed.

■ Plaintiffs next claim that even if the court finds that the contract violates the Act, they are still entitled to recover in *quantum meruit*, for the reasonable value of the management services they provided to defendants. In support of this argument, plaintiffs rely on *Katz v. Zuckermann* (1984), 126 Misc. 2d 135, 481 N.Y.S.2d 271, and *Gorman v. Grodensky* (1985), 130 Misc. 2d 837, 498 N.Y.S.2d 249, wherein the courts found the agreements at issue to constitute illegal fee splitting, but permitted the plaintiffs to maintain actions based on unjust enrichment for rendering permissible services.

In the instant case, however, the legitimate management services as set forth in the management agreement are so intertwined with the illegal fee-sharing portion of the contract, and the referral services of the Concept, that severance is impossible and recovery in *quantum meruit* was properly denied. Where a contract is illegal or against public policy, the contract should not be enforced, because to allow such relief would undermine the policy considerations in prohibiting fee splitting. (*O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, 537 N.E.2d 730; *Schnackenberg v. Towle* (1954), 4 Ill. 2d 561, 123 N.E.2d 817.) In order to discourage professionals and nonprofessionals from attempting illegal fee splitting, the court will leave the parties where they have placed themselves. *Leoris v. Dicks* (1986), 150 Ill. App. 3d 350, 501 N.E.2d 901.

■ Finally, there is no merit to plaintiffs' final contention that the trial court erred in refusing to allow plaintiffs' motion, filed November 13, 1992, to amend their complaint after summary judgment to add three new counts. On November 16, 1992, before the trial court had an opportunity to rule on plaintiffs' motion for leave to amend, plaintiffs filed a notice of appeal as to the entry of summary judgment on all counts of plaintiffs' complaint. The filing of a timely notice of appeal causes the jurisdiction of a reviewing court to attach and deprives the lower court of jurisdiction. See *Andersen v. Resource Economics Corp.* (1988), 177 Ill. App. 3d 358, 532 N.E.2d 350, *vacated on other grounds* (1990), 133 Ill. 2d 342, 549 N.E.2d 1262 (trial court was without jurisdiction to rule on plaintiff's motion for leave to file an amended complaint because plaintiff had filed a notice of appeal); *Bachewicz v. American National Bank & Trust Co.*

(1979), 75 Ill. App. 3d 252, 393 N.E.2d 652 (filing of notice of appeal divested the trial court of jurisdiction to allow the filing of an amended complaint).

Accordingly, for the reasons set forth above, we affirm the decision of the trial court.

Affirmed.

MURRAY and COUSINS, JJ., concur.