NO. 4-03-0876

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

VINE STREET CLINIC, an Illinois Part- ) Appeal from

nership, and URSULA THATCH, M.D., ) Circuit Court of

Plaintiffs-Appellants and ) Sangamon County

Cross-Appellees, ) No. 03MR79

v. ) 

HEALTHLINK, INC., an Illinois Corpora- )

tion, ) Honorable

Defendant-Appellee and ) Leo J. Zappa, Jr.,

Cross-Appellant. ) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

This case presents the question whether a company that creates a list of health-care providers that it makes available for a charge to members of health plans may enter into an agreement under which the health-care providers themselves would pay to be included on the list.  We conclude the agreement improperly requires physicians to pay a fee for the referral of patients.  We affirm in part, reverse in part, and remand.

I. BACKGROUND      

Plaintiff Vine Street Clinic is a partnership consisting of physicians who render psychiatric services.  Plaintiff Ursala Thatch, M.D., is an Illinois physician who specializes in obstetrics and gynecology.  Defendant HealthLink, Inc., is an Illinois corporation that enters into participating physician agreements with physicians, and other agreements with other health-care providers, thereby creating a network of health-care providers.  HealthLink makes these provider networks available to members of health plans that are offered by insurance carriers, self-funded employer groups, governmental entities, and union trusts ("payors").  HealthLink contracts with payors and grants them access to its networks.  Health-care providers agree to provide medical services to payor members at a discounted rate and send their claims for reimbursement to HealthLink.  HealthLink processes the claims and sends them to the payor for benefit determination and payment.

Vine Street was a provider in HealthLink's network from 1989 until 2001.  During that time, Vine Street paid HealthLink a 5% administrative fee that totaled at least $21,720.48.  Thatch is a provider in HealthLink's network.  From 1993 until June 30, 2002, she paid HealthLink a percentage-based fee, totaling $25,079.06.  On May 30, 2002, HealthLink calculated her new fixed flat fee at $600 per month.  Thatch refused to pay the flat fee. 

The Attorney General is charged with enforcing state law, including the Medical Practice Act of 1987 (Act) (225 ILCS 60/1 through 63 (West 2002)).  On March 5, 2002, the Attorney General issued an opinion that section 3.7 of the HealthLink agreement, requiring each participating physician to pay HealthLink an administrative fee equal to 5% of the amounts allowed in HealthLink's rate schedule for services provided to members by the physician, violated subsection 22(A)(14) of the Act and is void under Illinois law.  2002 Ill. Att'y Gen. Op. No. 02-005, slip op. at 7.  On May 30, 2002, HealthLink notified its providers that to comply with the Attorney General's opinion, it would charge a fixed flat fee instead of the percentage-based fee.  HealthLink calculated the flat fee based on two factors:  physician speciality and volume of HealthLink claims submitted during the preceding calendar year.  

Plaintiffs' complaint sought a declaration that both the percentage-based fee and the flat fee violated the Act (Ill. Rev. Stat. 1987, ch. 111, pars. 4400-1 through 4400-63 (now 225 ILCS 60/1 through 63 (West 2002))) and sought recovery of all fees previously paid.  Other counts alleged a violation of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, pars. 613 through 1065.906 (now 215 ILCS 5/1 through 1416 (West 2002))) and a theory of unjust enrichment.  The trial court dismissed the request for recovery of fees previously paid, reasoning that even if the agreements for fees were illegal, a party to an illegal contract cannot recover monies paid pursuant to it.  The trial court later entered judgment on the pleadings (735 ILCS 5/2-615(e) (West 2002)), declaring that the percentage-based fee violated the Act but the fixed flat fee did not.  The trial court did not address plaintiffs' request for class certification.  The court made a finding that no just reason existed for delaying appeal under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).  Plaintiffs appeal, and HealthLink cross-appeals.  

II. ANALYSIS

Statutory interpretation, construction of contracts, and determinations of public policy are all questions of law where our review is 
de
 
novo
.  
Shields v. Judges' Retirement System
, 204 Ill. 2d 488, 492, 791 N.E.2d 516, 518 (2003); 
Liccardi v. Stolt Terminals (Chicago), Inc.
, 283 Ill. App. 3d 141, 147, 669 N.E.2d 1192, 1199 (1996).  Judgment on the pleadings is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  In ruling on a motion for judgment on the pleadings, only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record may be considered.  All well-pleaded facts and all reasonable inferences from those facts are taken as true.  Our review is 
de
 
novo
.  
M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center
, 198 Ill. 2d 249, 255, 764 N.E.2d 1, 4 (2001).

A. The Medical Practice Act

Subsection 22(A)(14) of the Act provides that the Department of Professional Regulation may revoke or take other action regarding the license of any person to practice medicine on a number of grounds, including:

"(14) Dividing with anyone other than 

physicians with whom the licensee practices 

*** any fee, commission, rebate[,] or other 

form of compensation for any professional 

services not actually and personally rendered."  

225 ILCS 60/22(A)(14) (West 2002). 

Three exceptions exist:  (1) where physicians divide fees in an approved partnership, corporation, or association; (2) where approved medical corporations form a partnership or joint venture; or (3) where physicians concurrently render professional services to a patient and divide a fee, "provided[] the patient has full knowledge of the division, and, provided, that the division is made in proportion to the services performed and responsibility assumed by each."  225 ILCS 60/22(A)(14) (West 2002).

It is interesting that subsection 22(A)(14) does not mention the terms "fee splitting" or "referral."  Compare American Medical Association, Code of Medical Ethics:  Current Opinions with Annotations, 2002-2003, No. 6.02 (2003):  "Payment by or to a physician solely for the referral of a patient is 

fee[-]splitting and is unethical."  Fee splitting occurs when a physician refers a patient to another physician and then collects a portion of that patient's fee.  
Lieberman & Kraff v. Desnick
, 244 Ill. App. 3d 341, 345, 614 N.E.2d 379, 381 (1993).  Although not specifically referred to in subsection 22(A)(14), fee splitting is clearly an evil prohibited by the broad language of the Act and by public policy.  
Lieberman
, 244 Ill. App. 3d at 345, 614 N.E.2d at 382 (statute, however, not restricted solely to fee splitting).  

Lawyers, in contrast, can receive a fee for referring a client to a lawyer not in the same firm, even if no services are performed by the referring lawyer, so long as "the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer."  134 Ill. 2d R. 1.5(g)(2).  The rule in effect makes the referring lawyer a partner of the lawyer performing the work, for that particular case.  Under Illinois law, agreements to split fees between a lawyer and a nonlawyer are usually against public policy.  
In re Marriage of Steinberg
, 302 Ill. App. 3d 845, 857, 706 N.E.2d 895, 903 (1998); see also 134 Ill. 2d R. 5.4(a) ("A lawyer or law firm shall not share legal fees with a nonlawyer").  The policy against fee splitting stems from the concerns that an attorney who has agreed to split fees may be tempted to devote less time and attention to the cases of the clients whose fees they must share and that a layperson may have an incentive to recommend an attorney, not based on the lawyer's credentials, but on her own financial interest.  
Steinberg
, 302 Ill. App. 3d at 857, 706 N.E.2d at 903; 
O'Hara v. Ahlgren, Blumenfeld & Kempster
, 127 Ill. 2d 333, 343, 537 N.E.2d 730, 734 (1989).

Rule of Professional Conduct 7.2(b), effective August 1, 1990, now allows a lawyer to "pay the usual charges of a not-for-profit lawyer referral service or other legal service organization."  134 Ill. 2d R. 7.2(b).  Under Rule 7.2(b), a lawyer has been required to pay a referral fee of 25%, $31,250, to the nonprofit lawyer referral service of the West Suburban Bar Association.  However, "[a] bar association is motivated to ensure the integrity and competency of the lawyers it refers."  
Richards v. SSM Health Care, Inc.
, 311 Ill. App. 3d 560, 568, 724 N.E.2d 975, 981 (2000).  We do not see any similar independence on the part of an organization such as HealthLink, and no statute authorizes such a referral fee.  At any rate, lawyer fee splitting and physician fee splitting raise somewhat different concerns and do not necessarily warrant identical solutions. 
 It is also interesting that subsection 22(A)(14) is directed at physicians; it is the physician who is made subject to discipline by engaging in fee splitting.  
TLC The Laser Center, Inc. v. Midwest Eye Institute II, Ltd.
, 306 Ill. App. 3d 411, 428-29, 714 N.E.2d 45, 57 (1999).  Even though it is the physician whose participation in the contract is prohibited, where the contract violates the statute it is void and unenforceable, either by the physician or by the other contracting party.  
TLC
, 306 Ill. App. 3d at 429, 714 N.E.2d at 57.

B. Interpretation of the Act

A physician may not share his profits with a nonprofessional, even if no referral of patients is involved.  
E&B Marketing Enterprises, Inc. v. Ryan
, 209 Ill. App. 3d 626, 568 N.E.2d 339 (1991).  In 
E&B Marketing
, a physician and a marketing firm entered into an agreement in 1983 whereby the marketing firm would promote the physician's name and practice, primarily to insurance companies, in exchange for 10% on all billings collected.  Despite the argument that no direct solicitation of patients was involved, the appellate court voided the agreement because of the percentage fee.  The court rejected the argument that the contract was made only for the purpose of advertising and promoting the physician's business, because there was "fee-splitting for services not rendered by E & B."  
E&B Marketing
, 209 Ill. App. 3d at 630, 568 N.E.2d at 342.  Services were rendered, marketing services, but they were not professional medical services that qualified for payment under subsection 22(A)(14) and its exceptions.

There is an additional consideration in the present case.  In 
E&B Marketing
, the marketing firm was only on one side of the transaction, the side of the physician.  The marketing firm was similar to any other advertiser the physician employed, except for the 10% fee based on billings.  In the present case, HealthLink is on both sides.  It first charges the payors (and indirectly the patients) for furnishing a list of medical providers who will provide services at a reduced rate.  It then charges the providers it allows to be on the list.  Providers who might be very desirable to the patients and payors  do not get on the list unless they make the payment to HealthLink.  Plaintiffs argue that HealthLink is the only administrator that attempts to assess such fees.

The First District's decision in 
Practice Management Ltd. v. Schwartz
, 256 Ill. App. 3d 949, 628 N.E.2d 656 (1993),
 is informative.  
In that case, nonphysicians (optometrists) formed a partnership with physicians (opthalmologists) where the parties and their separate companies would refer patients to each other and split the partnership's profits.  The partnership would also render management services to the opthalmologists and their company.  The nonphysicians argued that they were seeking compensation for performing legitimate services having nothing to do with referral of patients.  The court rejected that argument, "since our careful review of the agreements at issue here leaves no doubt that patient referrals played a significant role in the arrangement between the parties."  
Practice Management
, 256 Ill. App. 3d at 954, 628 N.E.2d at 659.  The fee in 
Practice Management
 was a percentage fee, but any fee paid by a physician for referrals is improper.  

"One danger of fee splitting arrangements is that they may motivate nonprofessionals to recommend the services of a particular professional out of self-interest, and not because of the competence of the professional.  Such arrangements are against public policy because the public is best served by recommendations uninfluenced by financial considerations."  
Practice Management
, 256 Ill. App. 3d at 953, 628 N.E.2d at 658.  

From this we conclude that physicians may not receive a fee for referring a patient to another physician unless they are in practice with that physician or concurrently render professional services to the patient.  Nonphysicians may never receive a fee from a physician for referring a patient to that physician.  By definition, it is impossible for a nonphysician to render "professional services" to a patient and thereby qualify to receive a referral fee.  Nonphysicians can receive a fee for services rendered, apart from referral, but cannot receive a percentage of the physician's profit, or its equivalent.            C. HealthLink's Arguments

HealthLink argues that it does not make patient referrals, that it instead makes a network of thousands of physicians available to payors for use by members-patients.  HealthLink argues the flat fee currently paid by physicians is for administrative services, such as administrating and implementing HealthLink's policies, procedures, and programs, and not for patient referrals.

If all physicians in the State of Illinois belonged to the HealthLink network, it could not be said that HealthLink was recommending any physician.  That is not the situation, however; and it appears that in practice several physicians in a particular community will be on the HealthLink list and several will not.  The fact that HealthLink does not technically refer a member-patient to a specific provider does not negate the fact that HealthLink exercises substantial control over its member-patients.  HealthLink members must generally choose from the HealthLink list of network providers or incur substantial additional expense.  

There are some differences between referring a patient to a certain physician and referring a patient to several physicians in a particular community as HealthLink does.  We do not perceive any significant difference, however, between referring a patient to a particular physician and charging that physician a fee and referring a patient to several physicians, any of whom will be required to pay a fee.  Members-patients, through their payors, pay HealthLink a fee to provide them with a list of physicians.  The members-patients are entitled to assume that HealthLink is looking out for them, not for HealthLink's own interests.  Again, one of the dangers of allowing physicians to enter into agreements to pay fees to those who refer patients to them "is that they may motivate nonprofessionals to recommend the services of a particular professional out of self-interest, and not because of the competence of the professional.  Such arrangements are against public policy because the public is best served by recommendations uninfluenced by financial considerations."  
Practice Management
, 256 Ill. App. 3d at 953, 628 N.E.2d at 658.     It is difficult to accept that HealthLink provides  administrative services to physicians.  The services HealthLink provides seem identical to the claim-processing functions of insurance companies.  Physicians are still required to maintain patient records, including billing records.  HealthLink argues that it streamlines the process whereby a physician in the network receives payment, that instead of dealing with hundreds of payors, physicians, by contracting with HealthLink, engage a single, knowledgeable organization that does this for them.  That seems an incidental benefit, however, like dealing with a merchant that has good records and billing procedures as opposed to one that does not.  The good merchant will probably get more business but is unlikely to charge a fee for its businesslike operation.

HealthLink argues that the marketing and advertising for which it charges its physicians is no different from an physician placing an advertisement in the Yellow Pages, the local newspaper, or the local radio station.  That argument was rejected in 
Practice Management
, where a management-services group charged a fee based on a percentage of the physicians' profits.  
Practice Management
, 256 Ill. App. 3d at 954-55, 628 N.E.2d at 659-60.  Even absent charging a percentage, HealthLink does more than market and advertise here.  It actually refers members-patients to physicians.  

HealthLink argues that the Attorney General's opinion indicates that a flat fee is permissible.  

"With respect to the HealthLink agreement, it has not been suggested that the object of the agreement is violative of public policy, or that the services that HealthLink provides are improper in any way.  The only aspect of the agreement found invalid in opinion No. 02-005 was the basis upon which the fees for the administrative services performed under the agreement are calculated."  2002 Ill. Att'y Gen. Op. No. 02-005, Addendum, slip op. at 5. 

The Attorney General's opinion focused on the percentage-fee aspect of the agreement and not the physicians' payments for referrals.  The Attorney General's opinion does not say that HealthLink may charge physicians a fee for referrals.  Certainly nothing is wrong with HealthLink creating a network of health-care providers.  Nothing is wrong with HealthLink charging its payors for making these provider networks available to them.  There is a problem, however, when HealthLink charges a fee, even a flat fee, to physicians who desire to be listed on the network of health-care providers.

Percentage fees certainly involve the division of fees, as that term is used in subsection 22(A)(14).  225 ILCS 60/22(A)(14) (West 2002).  A doctor cannot use a percentage fee to pay general expenses, such things as supplies, electricity, or nurses, even if no referral is involved.  
Practice Management
, 256 Ill. App. 3d at 954, 628 N.E.2d at 659.  We find it difficult to see any difference between the percentage fee criticized by the Attorney General and the "flat fee" in this case.  The "flat fee" is determined as to each provider by the volume of claims processed in the preceding year.  That fee is simply a percentage calculated by a more circuitous route.  See 
TLC
, 306 Ill. App. 3d at 428, 714 N.E.2d at 56 ("Although the contract did not structure the annual fee in literal terms of a 'percentage' of the practice's revenue 
per
 
se
, the fee clearly increased as the revenues increased").  The fact that fees are to be shared with nonphysicians could well exert pressure on the physicians to perform the services even if not needed.  
TLC
, 306 Ill. App. 3d at 428, 714 N.E.2d at 56.

We conclude that HealthLink refers patients to physicians through its network of health-care providers and that the fee HealthLink charges those providers, both the percentage fee and the flat fee, is a fee for referral of patients.  The section of the HealthLink agreement requiring that fee violates the Act and public policy and is accordingly void.

 D. Recovery of Fees

We agree with the trial court that plaintiffs are not entitled to recover fees previously paid, either the percentage fee or the flat fee.  Where a contract is illegal or against public policy, the contract should not be enforced, because to allow such relief would undermine the policy considerations in prohibiting fee splitting.  In order to discourage professionals and nonprofessionals from attempting illegal fee splitting, the court will leave the parties where they have placed themselves.  
Practice Management
, 256 Ill. App. 3d at 955, 628 N.E.2d at 660.  Plaintiffs argue they are not seeking to enforce the contract, only to be restored to the status quo, and they are not 
in
 
pari
 
delicto
 with HealthLink because they were coerced into signing the agreement to have access to patients.  This is not a case, however, where anyone "held a gun" to plaintiffs' heads.  Plaintiffs could have sought relief from the courts, the Attorney General, or the Department of Professional Regulation at any time.  The physicians who have really been harmed are the ones who never signed the agreement and never received the benefit of the provider network.  As discussed above, the physicians violated the Act, not HealthLink.  See 
TLC
, 306 Ill. App. 3d at 429, 714 N.E.2d at 57 ("the physician is the wrongdoer" under the Act).  We see no reason to depart from the rule that the parties will be left where they have placed themselves.

III. CONCLUSION

We affirm the trial court's decision that the percentage-based fee violated the Act but that plaintiffs could not recover monies paid pursuant to the agreement.  We reverse the trial court's decision that the fixed flat fee did not violate the Act.

Affirmed in part and reversed in part; cause remanded.

APPLETON, J., specially concurs.

STEIGMANN, J., concurs in part and dissents in part.

JUSTICE APPLETON, specially concurring:

I write separately in response to Justice Steigmann's partial dissent.  It is the majority's use of the term "referral" that is the strawman to which the dissenting opinion responds.

I find the "flat fee" charged by HealthLink, Inc., to be indistinct in substance from the "percentage fee" previously found to be violative of the law by the Illinois Attorney General.  That is the reason for my concurrence.  The semantical argument concerning what, if anything, a physician receives in exchange for payment of the fee is irrelevant.

JUSTICE STEIGMANN, specially concurring in part and dissenting in part:

In my opinion, the majority has misconstrued section 22(A)(14) of the Act, leading to its erroneous conclusion that HealthLink may impose neither a percentage-based fee nor a flat fee on the physicians who elect to participate in its network.  Accordingly, I dissent.  

I. ADDITIONAL BACKGROUND

Throughout these proceedings, HealthLink has asserted that it charges providers an administrative fee to cover services it performs on their behalf.  Those services include the following: (1) administering and implementing HealthLink's policies, procedures, and programs; (2) customer services; (3) utilization review and case management; (4) claims receipt, processing, or repricing; (5) network development and management; (6) provider marketing; (7) credentialing; (8) electronic-claims support services; (9) monthly patient-activity reporting services; and (10) claims-status research and advocacy services.

II. PERCENTAGE-BASED FEE

I disagree with the majority and the First District's overly broad interpretation of section 22(A)(14) of the Act, as set forth in 
Lieberman
, 
E&B Marketing
, 
Practice Management
, and 
TLC
.  The majority and the First District interpret section 22(A)(14) of the Act as if it did not contain the language "for any professional services not actually and personally rendered"  
(225 ILCS 60/22(A)(14) (West 2002)).  Indeed, the majority's decision would be precisely the same if the legislature amended the statute by deleting this language.  When interpreting a statute, a court must give effect to the legislature's intent, which is best determined by the statute's plain language.  
American Federation of State, County, & Municipal Employees, Council 31 v. Ryan
, 332 Ill. App. 3d 866, 871-72, 773 N.E.2d 739, 743 (2002).  If possible, a statute should be construed so that no term is rendered superfluous or meaningless.  
American Federation of State, County, & Municipal Employees
, 332 Ill. App. 3d at 872, 773 N.E.2d at 743.

The language of section 22(A)(14) of the Act permits physicians to divide fees with an entity for professional services actually and personally rendered.  225 ILCS 60/22(A)(14) (West 2002).  As written, the statute contains (1) a general prohibition against a physician's dividing fees and (2) exceptions to that general prohibition.  The exceptions are (1) other physicians with whom the physician practices and (2) other persons who provide professional services that are (a) actually rendered and (b) personally rendered.  
Because the Act places no limitation on the type of professional services that qualify under the section 22(A)(14) exception, this court should decline to (1) limit the term to professional medical services or (2) ignore the existence of the exception altogether. 

The record shows that HealthLink charged the percentage-based fee for administrative services provided for plaintiffs' benefit.  Those services are outlined in the contract between HealthLink and Thatch.  Although plaintiffs claim that HealthLink does not perform the services for the providers' benefit, they do not deny that HealthLink actually performs them.

The majority disparages these services by saying, "It is difficult to accept that HealthLink provides administrative services to physicians.  The services HealthLink provides seem identical to the claim-processing functions of insurance companies."  Slip op. at 11.  The majority also deems some of these services as "incidental" benefits.  Slip op. at 11.
  However, the majority cites no evidence in the record supporting the inference it has drawn--namely, that the contract setting forth the services HealthLink provides is essentially a sham and that the fees physicians pay HealthLink are actually "kickbacks" for HealthLink's "referral" of patients to physicians in the network.  Absent some evidence that HealthLink does not actually provide physicians with the services it purports to provide under the contract, I would conclude that (1) HealthLink provides these services and (2) these services are professional services that fall within the section 22(A)(14) exception.     

Throughout the majority's analysis of the Act, the majority constantly uses the terms "referral" and "referring" to describe the essence of the relationship between Healthlink and the physicians in the network.  For instance, in the majority's concluding paragraph in part II. B. of its opinion, it writes, in pertinent part, as follows: (1) "physicians may not receive a fee for referring a patient to another physician," unless certain circumstances exist; (2) "[n]onphysicians may never receive a fee from a physician for referring a patient to that physician"; and (3) "[b]y definition it is impossible for a nonphysician to render 'professional services' to a patient and thereby qualify to receive a referral fee."  Slip op. at 9.  These are just a few examples of the majority's use of those terms.  What is significant about the use of these terms is that neither "referral" or "referring" (or any other form of the verb "refer," for that matter) appears in section 22(A)(14) of the Act, which the majority purports to be construing.  Thus, the majority has reached its conclusion by extensively discussing terms that do not appear in the statute while ignoring those that do.  

The kind of analysis the majority engages in amounts to judicial legislating.  That is, the majority has construed section 22(A)(14) of the Act not as written, but as the majority believes the legislature should have written it.  Although I might agree with the policy considerations expressed in the majority's opinion, my personal preferences regarding what the statute should say and the policies it should further are as irrelevant as are the personal preferences of my colleagues.  Instead, our duty is to construe the statute as written, bad policy and all.  See 
In re Application of the County Treasurer & exofficio Collector of Cook County
, 323 Ill. App. 3d 1044, 1049, 753 N.E.2d 363, 367 (2001) (a court must construe a statute as written and "may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute"). 

A new convenience offered by many physicians to their patients is the opportunity to pay their medical bills with a credit card.  Companies that permit physicians to offer this convenience typically assess the physician a small percentage of the physician's billed fee to pay for the service.  In my judgment, such "fee splitting" is entirely permissible under section 22(A)(14) of the Act because these are professional services 
actually
 
and
 
personally
 
rendered
 by the credit card company to the physician.  When I asked plaintiffs' counsel at oral argument whether such credit card fee splitting was permissible, they said "yes" but explained that the difference between the credit card company and HealthLink is that the credit card company did not refer patients to certain physicians, whereas HealthLink did.  The majority seems to have accepted this argument.  Even though I disagree with the claim that HealthLink in fact refers patients to certain physicians, I could concede the point because, as earlier discussed, such a referral is irrelevant.  Because the statute does not allude to referrals, the issue of referrals is simply a straw man that plaintiffs and the majority have chosen to knock down. 

Further, this contract does not offend Illinois public policy.  HealthLink does not refer any specific providers to members; its members are allowed to choose their own provider from within HealthLink's network or choose a physician not in the network at a higher cost.  The majority's tortured efforts to construe this record so as to find referrals being made by HealthLink constitutes its own best refutation.  Although the fees were based on a percentage of each provider's processed claims, HealthLink has no control over what medical procedures a provider will administer and what procedures the payor will cover.  This contract does not jeopardize the medical judgment of providers or threaten the safety of members who sign up with HealthLink.  In addition, the goal of the Act is to regulate the licenses of physicians, not to prevent them from entering into legitimate contracts or relieve them of the corollary duty to pay for services actually and personally rendered pursuant to such contracts.  

For the reasons stated, I conclude that the trial court erred by determining that the percentage-based fee violated either the Act or Illinois public policy. 
 

III. FIXED FLAT FEE

I also disagree with the majority's conclusion that the trial court erred by determining that HealthLink's fixed flat fee does not violate the Act.    

In May 2002, HealthLink modified its method for calculating the administrative fee from the percentage-based fee to a fixed flat fee.  The flat fee covered the same administrative services covered by the percentage fee.  For the reasons set forth in my analysis of the percentage-based fee, I conclude that HealthLink's flat fee is valid and does not violate the Act or Illinois public policy.

IV. RECOVERY OF FEES

I agree with the majority's decision rejecting the recovery of fees.