THIRD DIVISION
May 28, 2008

No. 1-07-1594

| | | |
|---|---|---|
| CENTER FOR ATHLETIC MEDICINE, LTD., an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INDEPENDENT MEDICAL BILLERS OF ILLINOIS, INC., an Illinois Corporation, and MEDORIZON, INC., an Illinois Corporation, | ) ) ) | Honorable |
| | ) | Lee Preston, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Plaintiff Center for Athletic Medicine, Ltd. (CAM), filed a two-count amended complaint against defendants Independent Medical Billers of Illinois, Inc. (IMB), and Medorizon, Inc. (Medorizon), alleging that defendants breached their agreement with plaintiff to perform medical billing services and, in the alternative, alleging that defendants' retention of payments without providing promised services resulted in unjust enrichment. Defendants moved for summary judgment and the circuit court granted defendants' motion, finding that the agreement between plaintiff and defendants was void where it constituted improper fee sharing in violation of the

1-07-1594

Medical Practice Act of 1987 (Medical Practice Act) (225 ILCS 60/22(A)(14) (West 2004)).

Plaintiff now appeals. For the following reasons, we affirm.

## I. BACKGROUND

On August 23, 2005, plaintiff filed its two-count amended complaint against defendants. Plaintiff is a professional corporation of physicians in the business of providing medical care and services, focusing on sports medicine, in Illinois. Defendant IMB is an Illinois corporation in the business of providing billing, accounts receivable, and collection services for health care providers. Defendant Medorizon is the parent company of IMB. Plaintiff and IMB entered into an agreement on May 2, 1995, in which IMB agreed to provide medical billing services to plaintiff. Plaintiff alleged that at some point after the agreement was executed, Medorizon became the parent company of IMB.

The agreement provided in pertinent part:

"(IMB) will provide the following services for * * * (CAM):

Process all approved charges, payment posting, and follow up on all commercial

insurance, * * * Medicare, HMO's, Commercial, Work Comp. and self pay

accounts for service dates to commence approximately on or around April 17,

1995. Our primary focus will be that of maximizing CAM reimbursements and

minimize your day[s] outstanding from all payors.

* * *

The fee for the above process will be:

-4.50 % on all reimbursements.

-2-

-6.25 % on all claims not originally processed by IMB."

In count I of plaintiff's complaint, plaintiff alleged that defendants breached the contract, *inter alia*, by failing to maximize plaintiff's reimbursements, handle plaintiff's debt in a timely manner, and properly encode charge documents. Plaintiff alleged that as a direct and proximate result of defendants' breaches of the agreement, approximately 24% of plaintiff's total charges during the term of the agreement had been identified as lost and unrecoverable. Plaintiff alleged that from January 1, 2000, to March 31, 2004, plaintiff suffered damages in excess of $4.4 million as a result of defendants' alleged breaches. In count II of the complaint, plaintiff alleged, in the alternative, that defendants were unjustly enriched by failing to provide agreed- upon services notwithstanding receiving payments from plaintiff for such services.

On September 21, 2006, IMB filed a separate complaint, seeking to recover unpaid fees allegedly owed by plaintiff for IMB's medical billing services. On November 13, 2006, IMB's suit against plaintiff was consolidated with the instant case.

On December 26, 2006, defendants filed a motion for summary judgment on the grounds that plaintiff's breach of contract and unjust enrichment claims were invalid because the agreement was void where it violated the fee-splitting prohibition of section 22(A)(14) of the Medical Practice Act. 225 ILCS 60/22(A)(14) (West 2004). Plaintiff filed a response to defendants' motion for summary judgment, in which plaintiff argued that the agreement did not violate the fee-splitting prohibition of section 22(A)(14) of the Medical Practice Act. Plaintiff also argued that the public policy considerations behind the fee-splitting prohibition were to prevent influencing referral and patient-care decisions based on motivations unrelated to

professional judgment and proper treatment. Plaintiff asserted that such public policy concerns were not implicated by the agreement because defendants provided medical billing services, dealing primarily with insurance companies, to maximize reimbursements after medical decisions had been made and treatment rendered. Plaintiff also attached the affidavit of Rebecca Busch in support of its opposition to defendants' motion for summary judgment.

In her affidavit, Rebecca Busch stated that she is the president and chief executive officer of Medical Business Associates and that she has extensive experience, *inter alia*, with all matters related to this litigation. Busch attested that she was retained by plaintiff to audit accounts receivable and to analyze plaintiff's relationship with defendants. Busch attested that defendants' contractual obligations with plaintiff were composed primarily of activities to ensure the processing of claims and denial management. Busch explained that denial management comprises activities utilized to have medical bills paid by insurance companies and patients. Busch stated that denial management is a "back end service" that is entirely focused on maximizing payment of medical bills by insurance companies and patients. Busch attested that the billing company is a "back end" operational function that has no impact on utilization of services by the patient. Busch also attested that the billing company has no impact on the referral of patients to the provider.

Busch attested that denial management for health providers is necessary due to the complex nature of medical billing. The health-care reimbursement market is complicated by multiple-party contracts, fragmented in the relationships between the patient, the payer, and the plan sponsor. Busch also attested that the practice of billing a percentage of amounts collected

for the submission of bills, denial management, and advocacy for the consumer has long been established as the most appropriate protocol. The typical business contract between a billing agent and a provider is based on a percentage fee basis on the actual collections. Busch further attested that the percentage fee basis is consistent with market practices between the payer and the employer, and between the provider and collection services.

Following a hearing on defendants' motion for summary judgment, the circuit court granted defendants' motion and dismissed both counts of plaintiff's complaint. In doing so, the circuit court found that the agreement between the parties was void as against the fee-sharing prohibition of section 22(A)(14) of the Medical Practice Act. The circuit court noted that while the policy considerations did not appear to be implicated in the arrangement made between the parties, the plain meaning of the Medical Practice Act and our supreme court's interpretation of the statute prohibited the agreement in this case. The circuit court also made a finding that no just reason existed for delaying appeal under Illinois Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Plaintiff now appeals.

## II. ANALYSIS

On appeal, plaintiff contends that the circuit court erred in granting defendants' motion for summary judgment where the agreement did not constitute an illegal fee-splitting arrangement, in violation of section 22 of the Medical Practice Act. Plaintiff maintains that, pursuant to the agreement, defendants did not receive a percentage of plaintiff's revenue or fees charged by plaintiff for services rendered. Instead, plaintiff asserts, defendants received a percentage of reimbursements recovered by defendants as a result of dealing with insurers and

1-07-1594

other payors.

As this issue concerns the construction of a statute, it is a question of law, and our standard of review is *de novo*. Vine Street Clinic v. Healthlink, Inc., 222 Ill. 2d 276, 282 (2006). The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. Illinois Deptartment of Healthcare & Family Services v. Warner, 227 Ill. 2d 223 (2008). The most reliable indicator of the legislature's intent is the language of the statute, which is given its plain, ordinary and popularly understood meaning. Warner, 227 Ill. 2d 223. Further, when interpreting a statute, a court must presume that when the legislature enacted a law, it did not intend to produce absurd, inconvenient or unjust results. Vine Street, 222 Ill. 2d at 282.

Section 22(A)(14) of the Medical Practice Act provides that the Department of Professional Regulation may revoke or take other action regarding the license of any person to practice medicine on a number of grounds, including:

"(14) Dividing with anyone other than physicians with whom the licensee practices *** any fee, commission, rebate or other form of compensation for any professional services not actually and personally rendered." 225 ILCS 60/22(A)(14) (West 2004).

Three exceptions exist: (1) where physicians divide fees in an approved partnership, corporation, or association; (2) where approved medical corporations form a partnership or joint venture; or (3) where physicians concurrently render professional services to a patient and divide a fee "provided, the patient has full knowledge of the division, and, provided, that the division is made in proportion to the services performed and responsibility assumed by each." 225 ILCS

1-07-1594

60/22(A)(14) (West 2004).

Several Illinois Appellate Court opinions have construed section 22(A)(14) to prohibit payments by physicians for services based upon a percentage of professional income. In the earliest of these cases, E&B Marketing Enterprises, Inc. v. Ryan, 209 Ill. App. 3d 626 (1991), a physician and a marketing firm entered into an agreement whereby the marketing firm would promote the physician's name and practice, primarily to insurance companies, in exchange for 10% of all billings collected. The appellate court held that the agreement constituted fee splitting in violation of the Medical Practice Act[1] and was therefore void as against public policy. E&B Marketing, 209 Ill. App. 3d at 628-30. The appellate court found the fact that the contracting physician collected the fees from insurance companies, rather than from individual patients, had no effect upon the illegality of the fee-splitting agreement. E&B Marketing, 209 Ill. App. 3d at 629-30.

In Lieberman & Kraff, M.D., S.C. v. Desnick, 244 Ill. App. 3d 341 (1993), the appellate court invalidated a contract for the sale of a medical practice which provided compensation to the

---

[1] The appellate court's determination in E&B Marketing was based on the earlier statutory language of section 16(14) of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4433(14)), which was repealed effective December 31, 1997. See E&B Marketing, 209 Ill. App. 3d at 629 n.1. However, our supreme court has determined that the slightly different language of now-repealed section 16(14) did not effect the analysis of whether a prohibited fee arrangement occurred under section 22(A)(14) of the Medical Practice Act. Vine Street, 222 Ill. 2d at 285-86.

seller over a 20-year period, holding that the contract was an illegal fee-sharing agreement. The appellate court noted that the Medical Practice Act does not contain the phrase "fee splitting," which occurs "when a physician refers a patient to another physician and then collects a portion of that patient's fee." Lieberman & Kraff, 244 Ill. App. 3d at 345. The court found that "nothing in the language of the statute indicates an intent to restrict the reach of the statute solely to conduct traditionally known as fee splitting. Therefore, the issue of whether or not the parties' agreement falls within the technical definition of 'fee splitting' is not relevant *** [Rather, the issue] is whether the parties' agreement violates the statute as written." Lieberman & Kraff, 244 Ill. App. 3d at 345.

The appellate court determined that when read as a whole, the plain language of the Medical Practice Act "prohibits the sharing, pooling, dividing, or apportioning of professional fees by physicians unless the fee agreement falls within one of the enumerated exceptions." Lieberman & Kraff, 244 Ill. App. 3d at 345. The court found that while "[t]he broad language of the Medical Practice Act clearly prohibits agreements which can be characterized as fee-splitting agreements," the statute "also prohibits all other fee-sharing arrangements not specifically authorized." Lieberman & Kraff, 244 Ill. App. 3d at 345. In determining that the agreement for the sale of the medical practice was prohibited by the Medical Practice Act, the appellate court noted that the fact that the purpose behind the parties' agreement may have been benign is of no relevance. The court explained "where an agreement results in fee splitting, the purpose behind the agreement is irrelevant; the agreement is void." Lieberman & Kraff, 244 Ill. App. 3d at 346, citing E&B Marketing, 209 Ill. App. 3d at 630.

Shortly after <u>Lieberman & Kraff</u>, the appellate court decided <u>Practice Management Ltd. v.</u>
<u>Schwartz</u>, 256 Ill. App. 3d 949 (1993). In that case, nonphysicians (optometrists) formed a
partnership with physicians (ophthalmologists) where the parties and their separate companies
would refer patients to each other and split the partnership's profits. The partnership would also
provide management services to the ophthalmologists and their company. The nonphysicians
argued that they were seeking compensation for performing legitimate services having nothing to
do with the referral of patients. <u>Practice Management</u>, 256 Ill. App. 3d at 954. The appellate
court held that even though some legitimate management services were performed by the
nonphysicians, the fee arrangement was improper. The agreement allowed nonphysicians to be
compensated through a percentage of the net profits generated by the licensed physicians in
violation of the Medical Practice Act, which prohibits not only fee splitting, but all other fee-
sharing arrangements not specifically authorized therein. <u>Practice Management</u>, 256 Ill. App. 3d
at 953-55.

In <u>TLC The Laser Center, Inc. v. Midwest Eye Institute II, Ltd.</u>, 306 Ill. App. 3d 411
(1999), the appellate court again considered whether a prohibited fee arrangement occurred in the
context of a service agreement contract between a group of ophthalmologists and the purchaser
of the ophthalmological practice's assets. The court held that the service contract violated
section 22(A)(14) of the Medical Practice Act because it provided, in part, for an annual fee to be
paid by the ophthalmological practice to the purchaser, an unlicenced corporation, in addition to
specific reimbursements. <u>TLC</u>, 306 Ill. App. 3d at 428. The court noted that "the service
agreement clearly reveals that the amount of the annual fee was determined by defendants'

'revenues for year.' " TLC, 306 Ill. App. 3d at 428. Although the annual fee was not calculated on a straight percentage, the court found a "direct relation" between the revenues generated by the practice and the fee the ophthalmologists were required to pay to the purchaser. The court noted that the establishment of a floor and a ceiling for the annual fee did not change the character of the relationship. TLC, 306 Ill. App. 3d at 428. In finding the fee arrangement invalid, the TLC court observed the broad language of the statute:

> "Section 22 of the Medical Practice Act does not only prohibit sharing of fees for patient referrals; Illinois courts have struck down contracts for the sale of a medical practice (see Lieberman & Kraff v. Desnick, 244 Ill. App. 3d 341 *** (1993)) and contracts which involved 'performance of some legitimate management services' (see Practice Management Ltd. v. Schwartz, 256 Ill. App. 3d 949 *** (1993)) on the basis that the contracts ran afoul of the statute. The 'reach of the statute is not limited to "fee-splitting." The Medical Practice Act also prohibits all other fee-sharing arrangements not specifically authorized.' Lieberman & Kraff, 244 Ill. App. 3d at 345 ***." TLC, 306 Ill. App. 3d at 427.

Finally, in Vine Street, our supreme court determined that an agreement requiring participating physicians to pay the operator of a network of health-care providers a percentage-based fee for administrative services violated section 22(A)(14) of the Medical Practice Act, where the fee was equal to 5% of the amount allowed in the operator's rate schedule for services provided to members by the physicians. Vine Street, 222 Ill. 2d at 292-93. With respect to this 5% fee agreement, our supreme court observed:

"[S]ection 22(A)(14) of the Act prohibits: (1) 'traditional' fee splitting for patient referrals between licensees, except those in a partnership or corporate-type relationship and licensees concurrently rendering professional services to a patient; and (2) fee-sharing agreements whereby a licensee 'divides with anyone,' for any service rendered to the licensee, *a percentage of the monies earned by the licensee for medical services he or she has performed.* 225 ILCS 60 22(A)(14) (West 2002). ***. 'Nonphysicians can receive a fee for services rendered, apart from referral, but cannot receive a percentage of the physician's profit, or its equivalent.' [Vine Street Clinic v. Healthlink, Inc., 353 Ill. App. 3d 929, 935 (2004)]."

Vine Street, 222 Ill. 2d at 292-93.

Healthlink, Inc. 222 Ill. 2d at

292-93.

Our supreme court concluded that the percentage fee was violative of section 22(A)(14) because the agreement required participating physicians to pay the operator of the network of health-care providers a portion of the fee the physicians received from each patient for medical services they performed. Vine Street, 222 Ill. 2d at 294.

However, our supreme court found that the operator's amendment of the agreement to allow a flat fee for administrative services was not invalid, where the flat fee was paid monthly on a basis independent of the physician's fees. The court found that the operator's flat fee was "not based or linked to revenue, gross receipts or billings collected." Instead, it was based on

1-07-1594

"the volume of claims" that the operator processed for a physician during the prior year and the physician's specialty. Vine Street, 222 Ill. 2d at 294. The court explained that unlike the agreement in TLC, which involved a fee that increased as the revenues increased, the operator's flat fee was based on the volume and complexity of the administrative services provided. The operator's fee would not automatically increase as the revenue of the participating physician increased. The court, therefore, concluded that the monthly flat fee did not constitute prohibited fee sharing under section 22(A)(14). Vine Street, 222 Ill. 2d at 295.

In doing so, our supreme court rejected the physicians' claim that section 22(A)(14) was meant to prohibit the division of fees between licensees and *any* other individual or entity that may render professional services under the Act, where the court found that "professional services" cannot be performed by anyone other than those licensed to practice medicine. Vine Street, 222 Ill. 2d at 291. The court found that because the operator's provision of administrative services to the physicians "does not encompass *medical* 'professional services' within the meaning of the Act, no violation of section 22(A)(14) can occur." (Emphasis in original.) Vine Street, 222 Ill. 2d at 296. While this language can be interpreted to mean that billing services do not constitute "professional services" under section 22(A)(14), our supreme court made clear that the percentage fee for billing services was violative of section 22(A)(14) because the agreement required the physicians to pay the operator a portion of the fee the physicians received from each patient for medical services they performed. Vine Street, 222 Ill. 2d at 292-93. In contrast, our supreme court also determined that the flat fee agreement for administrative services did not constitute prohibited fee sharing under section 22(A)(14). Vine Street, 222 Ill. 2d at 295.

-12-

Following the plain meaning of section 22(A)(14) and these interpretations by the appellate court and our supreme court, we conclude that the agreement in the present case constitutes prohibited fee sharing under the Medical Practice Act. Here, the agreement provided that the amount of the fee defendants would receive for medical billing services was "4.5 percent on all reimbursements" and "6.25 percent on all claims not originally processed by [defendants]." The agreement structured the fee in terms of plaintiff's revenues for providing medical services to patients. Defendants were to receive a fee based on the percentage of plaintiff's revenues that defendants collected from payors. Accordingly, the fee increased as plaintiff's revenues increased. Since defendants do not fall within any of the exceptions in section 22(A)(14), we find that the agreement violated the Medical Practice Act because defendants, nonphysicians, are prohibited from receiving a percentage of the physician's profit, or its equivalent. See Vine Street, 222 Ill. 2d at 292-93. The agreement is therefore void as against Illinois law.

Plaintiff, nonetheless, argues that the policy reasons behind the fee-splitting prohibition are not implicated by the present agreement, where defendants provided medical billing services and dealt primarily with insurance companies, rather than patients, after medical decisions had been made and treatment rendered to patients.

" ' The policy reasons behind the prohibition are the danger that such an arrangement might motivate a nonprofessional to recommend a particular professional out of self-interest, rather than the professional's competence. In addition, the judgment of the professional might be compromised, because the awareness that he would have to split fees might make him reluctant to provide proper (but unprofitable) services to a patient, or, conversely, to provide unneeded

1-07-1594

(but profitable) treatment. [Citations].' <u>TLC</u>, 306 Ill. App. 3d at 427-28." <u>Vine Street</u>, 222 Ill. 2d at 288-89.

Plaintiff presented evidence, in Busch's affidavit, regarding the complex nature of medical billing. Busch attested that defendants' "back end" operational function had no impact on the utilization of services by a patient or on the referral of patients. Busch also attested to the purpose and common practice of a billing company and provider contracting on a percentage fee basis. Plaintiff maintains that the policy reasons cited in <u>Vine Street</u> are not readily apparent in this case where the agreement entails defendants collecting revenues after services by the physicians have already been rendered. During oral arguments, defendants argued that if medical billers were paid on a percentage basis, they would have an incentive to increase fees for medical services provided to a patient by "upcoding" a different medical procedure for billing purposes.

Contrary to plaintiff's policy argument, the appellate court has previously determined that the fact that fees were collected from insurance companies, rather than from individual patients, has no effect upon the illegality of a fee-splitting agreement. See <u>E&B Marketing</u>, 209 Ill. App. 3d at 629-30. In addition, in determining whether an arrangement constitutes prohibited fee splitting, the fact that the purpose behind the parties' agreement may have been benign is of no relevance. <u>Lieberman & Kraff</u>, 244 Ill. App. 3d at 346. In this case, the agreement resulted in fee splitting and is void, irrespective of the purpose and common practices involved in medical billing agreements.

Plaintiff further argues that an interpretation of the Medical Practice Act that bars any and all percentage-based agreements between physicians and nonphysicians would lead to illogical

-14-

results, such as rendering void plaintiff's agreement with the electric company to pay its percentage of electricity because such payment would be made from plaintiff's revenue.

The appellate court rejected a similar argument by plaintiffs in Practice Management. The plaintiffs argued that if the court found that the arrangement in that case constituted illegal fee sharing, then virtually every payment made by a doctor for such things as supplies, electricity or nurses, would constitute fee sharing since that payment would ultimately come out of money derived from patient fees. Practice Management, 256 Ill. App. 3d at 954. In finding that the agreement constituted improper fee sharing, the appellate court found: "Plaintiffs' argument is not compelling, however, since generally, payments made to the electric company or members of a doctor's support staff do not depend on how much money the doctor earns. Such payments must be made regardless of whether the doctor makes or loses money that month. Under the agreement at issue here, plaintiffs were to be compensated through a percentage of the net profits generated by the defendant physicians." Practice Management, 256 Ill. App. 3d at 954-55. Similarly, in the present case, defendants were to be compensated based on a percentage of revenues defendants collected for plaintiff. Unlike the electric company, which did not receive payment based on plaintiff's profits, defendants' fee was dependent on the amount of money collected for plaintiff. We therefore find plaintiff's argument unconvincing.

Since the agreement is void as against Illinois law, we affirm the circuit court's order granting defendants' motion for summary judgment on both counts. Defendants argue that plaintiff waived review of the circuit court's grant of summary judgment on its unjust enrichment claim, count II, by failing to present any argument on that issue.

Plaintiff maintains that the circuit court's grant of summary judgment for both count I (breach of contract) and count II (unjust enrichment) was based on its finding that the contract violated the Medical Practice Act. Plaintiff asserts that because this court's determination regarding the application of the Medical Practice Act applies to both counts, separate arguments were not necessary in this case. Plaintiff also acknowledges that our supreme court has held that if a contract violates the Medical Practice Act, " 'the court will leave the parties where they have placed themselves.' " Vine Street, 222 Ill. 2d at 299, quoting Practice Management, 256 Ill. App. 3d at 955.

We find that plaintiff is unable to sue in equity for unjust enrichment where there was a contract between the parties, although the contract is void as a matter of law. See Hedlund & Hanley, LLC v. Board of Trustees of Community Colleges District No. 508, 376 Ill. App. 3d 200, 207 (2007) (when a contract exists between the parties, no quasi-contractual claim, such as *quantum meruit* can arise). " '[T]he law will not aid either party to an illegal act, but will leave them without remedy as against each other,' with the caveat that they are of equal knowledge, wilfulness and wrongful intent, or *in pari delicto.* [Citation; see also King v. First Capital Financial Services Corp., 215 Ill. 2d 1, 33-34 (2005).] (the doctrine of *in pari delicto* embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing)." Vine Street, 222 Ill. 2d at 297. Where this court has found that the percentage-based fee agreement between plaintiff and defendants violated the broad prohibition against fee sharing set forth in section 22(A)(14), the proper course is for the parties to be left

" 'where they have placed themselves.' " <u>Vine Street</u>, 222 Ill. 2d at 299, quoting <u>Practice</u>

<u>Management</u>, 256 Ill. App. 3d at 955.

### III.  CONCLUSION

For the above reasons, we affirm the circuit court's order granting defendants' motion for

summary judgment on both counts of plaintiff's complaint.

Affirmed.

THEIS and CUNNINGHAM, JJ., concur.