614 So.2d 1135 (1993)
PRACTICE MANAGEMENT ASSOCIATES, INC., Appellant,
v.
Daniel ORMAN, Appellee.
PRACTICE MANAGEMENT ASSOCIATES, INC., Appellant,
v.
Joseph J. BARIC, Appellee.
PRACTICE MANAGEMENT ASSOCIATES, INC., Appellant,
v.
Suzanne DOLLAWAY, Appellee.
Nos. 91-04235, 92-00484 and 92-00598.
District Court of Appeal of Florida, Second District.
February 10, 1993.
*1136 Richard S. Huszagh of Rudnick & Wolfe, Chicago, IL, and Melissa Gilkey Mince of Fernandez & Saunders, P.A., Pinellas Park, for appellant.
Jean R. Simons of Simons & Seeley, P.A., Madeira Beach, for appellees.
PATTERSON, Judge.
The appellant, Practice Management Associates, Inc. (PMA), challenges the final summary judgments entered in each of these cases which find its contracts with the appellees null and void on the ground that the contracts require illegal fee splitting. We consolidate these cases for the purpose of this opinion and reverse.
In each of these actions, the appellee, a chiropractor licensed and practicing in Illinois, entered into a contract with PMA entitled "Practice Starter Agreement." PMA, a Florida corporation, maintains its sole office in Clearwater, Florida, where the chiropractors are to send their payments. The contract specifies that any disputes arising from the contract are to be resolved by Florida law.
Under the agreement, PMA is to offer advice, education, and counseling to increase the growth and profits of the chiropractic practices. PMA's services include seminars, publications, call-in counseling, and in-person consultations. In return for PMA's services, the chiropractors are obligated to pay PMA ten percent of their weekly gross income or a weekly fee of $75, whichever is greater, for twenty-four months. The contract makes no reference to patient referrals or patient solicitation and, in fact, PMA does not engage in these activities.
When the appellees defaulted on the weekly payments, PMA brought an identical two-count action in each case. Count I sought damages for breach of the contract. Count II, in the alternative, was an action in quantum meruit. Each appellee answered and asserted more than twenty affirmative defenses.[1] One common affirmative *1137 defense asserted that the Practice Starter Agreement is illegal and void under Illinois law because it constitutes prohibited professional fee splitting. In each case, the trial court agreed and entered summary judgment in favor of the appellee on both counts of the complaint.
We first address the question of whether Florida or Illinois law should apply in resolving this issue.[2] Generally, when the parties to a contract have agreed upon the law which will govern their disputes, that law will be applied. Department of Motor Vehicles v. Mercedes-Benz of N. Am., Inc., 408 So.2d 627 (Fla. 2d DCA 1981). Therefore, the provision of the PMA contract which provides that "[t]he parties agree that the laws of the State of Florida shall govern this contract and any interpretations or construction thereof" is valid and binding between the parties. The only exception is if the performance of the contracts will cause the chiropractors to violate the laws or regulations governing their profession in the state where they practice. See Thomas v. Ratiner, 462 So.2d 1157 (Fla. 3d DCA 1984), review denied, 472 So.2d 1182 (Fla. 1985). Since the appellees are asserting the exception in these cases, we must determine whether the contracts require prohibited "fee splitting" under Illinois law.
The Practice Starter Agreement provides a method of compensation that does not fall within conventional definitions of fee splitting.[3] Traditionally, fee splitting is patient specific in the health care field and case or client specific in the legal field. The Practice Starter Agreement requires the chiropractor to give PMA a percentage of weekly gross income or a minimum weekly set fee, whichever is greater.
We know of no appellate court which has addressed a contract of this kind in regard to a member of a regulated profession. The appellees and the trial court rely on E & B Marketing Enterprises, Inc. v. Ryan, 568 N.E.2d 339 (Ill. App. 1st Dist. 1991), to support the conclusion that this method of payment constitutes prohibited fee splitting under Illinois law. In its contract with Dr. Ryan, E & B agreed to promote Ryan's name and practice by various techniques in exchange for "a consultant's fee of 10% on all billings collected by [Ryan] in connection with such referrals." 568 N.E.2d at 340. The marketing campaign was targeted primarily at insurance companies, soliciting them to refer their claimants to Ryan as potential patients. The court concluded the arrangement constituted prohibited fee splitting in violation of the Illinois Medical Practice Act and was further void on public policy considerations.
Ryan has no application to the facts of these cases. The contract in Ryan resulted in the referral of specific patients to Ryan[4] which falls within the traditional definition of fee splitting. PMA is clearly not involved in patient solicitation or patient referral, directly or indirectly. Therefore, if we are to consider whether the PMA payments constitute fee splitting, we must interpret chapter 111, paragraph *1138 4400-22(14), Illinois Rev. Statutes (1989), the Medical Practices Act.[5] Paragraph 4400-22(14) states in pertinent part:
4400-22. Disciplinary action  Grounds
§ 22. A. The Department may revoke, suspend, place on probationary status, or take any other disciplinary action as the Department may deem proper with regard to the license or visiting professor permit of any person issued under this Act to practice medicine, or to treat human ailments without the use of drugs and without operative surgery upon any of the following grounds:
... .
14. Dividing with anyone other than physicians with whom the licensee practices in a partnership, Professional Association or Medical or Professional Corporation any fee, commission, rebate or other form of compensation for any professional services not actually and personally rendered.
Unlike the statutes of many states which specifically prohibit fee splitting for patient referrals, the broad language of this section may be subject to various interpretations. To aid us in our interpretation, we look further to subparagraph 4400-22(24) which states an additional ground for disciplinary action:
Solicitation of professional patronage by any corporation, agents or persons, or profiting from those representing themselves to be agents of the [doctor]... .
We determine that the intent of these subsections, taken together, is to prohibit fee splitting for patient referrals in the traditional sense and that the PMA contract does not fall within the conduct proscribed.
We find support for our conclusion in Wyoming State Board of Examiners of Optometry v. Pearle Vision Center, Inc., 767 P.2d 969 (Wyo. 1989). In that case Holly, a licensed optometrist in Wyoming, purchased a franchise from Pearle to dispense optical lenses, frames, and other equipment under the Pearle Vision name. As part of the agreement, Holly subleased space from Pearle in the Frontier Mall in Cheyenne, Wyoming. Two-thirds of the space was used for the dispensing of optical goods and the remaining one-third, divided by a wall, was used by Holly to treat patients and perform optometric services. The agreement provided that Holly would pay Pearle a monthly royalty equal to eight and one-half percent of his gross revenues, which included not only the receipts from the sale of merchandise, but the fees charged to his patients for optometric services.
The State Board of Examiners brought an action to enjoin the continuation of this payment scheme on the ground that it constituted prohibited fee splitting, in violation of section 33-23-110(b)(i) W.S. 1977, which states in pertinent part:
(b) "Unprofessional and dishonest conduct" as used in this act is hereby declared to mean:
(i) The loaning of his license by any licensed optometrist to any person; the employment of "cappers" or "steerers" to obtain business, "splitting" or dividing a fee with any person or persons, the advertising by any means whatsoever of optometric practice or treatment or advice in which untruthful, improbable, misleading or impossible statements are made; ... .
In determining that Holly's obligation to pay to Pearle a percentage of his gross receipts did not constitute prohibited fee splitting, the court stated:
[I]t is clear that the activity which the legislature intended to prohibit is that which historically has been perceived as detrimental to the public welfare. That activity is described by invoking the slang terminology of "fee splitting," which is defined in Webster's Third International Unabridged Dictionary (1971) as "a dividing of a professional fee for a specialist's medical services with the recommending physician." That purpose would not extend to any conclusion that *1139 the legislature intended to prohibit every business relationship in which an optometrist agreed to pay a percentage of his optometric proceeds for a consideration furnished to him unless that consideration included providing patients or referring patients to the optometrist.
767 P.2d at 973.
Such an interpretation recognizes the complexities of marketing and management of professional services in today's competitive business environment without compromising the public policy behind legislation prohibiting or regulating the division of professional fees. We find nothing in Illinois statutes or case law to lead us to conclude that the intent of the Illinois Legislature differs. The method of payment required by the PMA contract does not constitute prohibited fee splitting under Illinois law nor is the contract repugnant to Illinois public policy as to this issue.
Reversed and remanded for further proceedings consistent with this opinion.
DANAHY, A.C.J., and CAMPBELL, J., concur.
NOTES
[1] One of these affirmative defenses, that the contract is a void franchise agreement under Illinois law, has previously been resolved in PMA's favor by this court. See Practice Management Assocs., Inc. v. Cochran, 564 So.2d 642 (Fla. 2d DCA 1990).
[2] This issue was partially resolved in Armaly v. Practice Management Assocs. Inc., 533 So.2d 920 (Fla. 2d DCA 1988). In Armaly, this court held that the PMA contract properly vests jurisdiction of these disputes in Florida courts and satisfies the requirements of World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), in regard to "long-arm" service of process pursuant to section 48.193(1)(g), Florida Statutes (1987). Accord Practice Management Assocs., Inc. v. Brown, 536 So.2d 1195 (Fla. 2d DCA 1989).
[3] Fee splitting: "a dividing of a professional fee for specialist's medical services with the recommending physician," Webster Third New International Dictionary 835 (1961); "[d]ivision of legal fees between attorney who handles matters and attorney who referred such to him or her," Black's Law Dictionary 616 (6th ed. 1990); "where a member of a profession divides the compensation he receives from a patient with another member of same profession or any person who has sent patient to him or has called him into consultation," 39A Words and Phrases, "Splitting of Fees" (1953).
[4] The court concluded that the fact that the insurance companies selected the patients to be referred to Ryan as opposed to E & B being the direct solicitor was of no consequence.
[5] The court in Ryan interpreted an earlier version of the Act which is essentially identical to paragraph 4400-22(14).