LIEBERMAN AND KRAFF, M.D., S.C., Plaintiff-Appellant, v. JAMES DESNICK *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—91—1407

Opinion filed March 31, 1993.

Barack, Ferrazzano, Kirschbaum & Perlman (Robert E. Shapiro and W. Scott Porterfield, of counsel) and Katten, Muchin & Zavis (Laurence H. Lenz, Jr., of counsel), both of Chicago, for appellants.

Stamos & Trucco, of Chicago (Michael T. Trucco and Steven J. Thompson, of counsel), for appellees.

JUSTICE COUSINS delivered the opinion of the court:
This appeal involves the proper interpretation of the Medical Practice Act. (Ill. Rev. Stat. 1985, ch. 111, par. 4401 *et seq.*) On October 4, 1979, the plaintiffs, Lieberman & Kraff, entered into a contract to sell their medical practice to the defendant, James H. Desnick. The contract obligated the defendant to make payments to the plaintiffs based on a percentage of his gross revenue over a 20-year period. The defendant made payments from 1981 until 1985, but in 1986 he refused to make further payments. On December 17, 1986, the plain-

tiffs brought an action for breach of contract against the defendant. After a hearing, the circuit court held that the contract was void under the Medical Practice Act and granted summary judgment in favor of the defendants on March 28, 1991.

We affirm.

BACKGROUND

Plaintiff, Lieberman & Kraff, M.D., S.C., is an Illinois service corporation which provides ophthalmology services to patients. Its principals, Dr. Howard Lieberman and Dr. Manus Kraff, are board-certified ophthalmologists licensed to practice medicine in Illinois. Defendant, James H. Desnick, M.D., is also a board-certified ophthalmologist, and he is licensed to practice medicine in the States of Illinois, Indiana and Florida.

In 1961, Lieberman and Kraff began practicing together at 4958 West Irving Park Road, Chicago, Illinois. By 1980, the Irving Park practice had developed over 10,000 patient files and had become one of the largest two-physician ophthalmological practices in Illinois. In 1976, the plaintiffs opened a second office at 5600 West Addison Street in Chicago.

Desnick began working for the plaintiffs at the Irving Park office on a part-time basis in 1976. Upon completion of his residency in 1979, he was employed full time.

On October 4, 1979, the parties entered into an agreement for the sale of the plaintiff's medical practice. The agreement provided that Lieberman and Kraff would transfer the Irving Park practice to Desnick effective January 1, 1981. The practice included all patient cards and records, office furnishings, equipment and other assets at 4958 West Irving Park Road.

Since Desnick had just completed his residency, he was unable to pay for the practice at the time of sale. Therefore, the parties agreed to amortize the payment over 20 years. The sales price was measured by a percentage of Desnick's gross revenue; he agreed to pay 10% of his gross billings for the first 10 years, and 5% of his gross billings for the following 10 years. He did not make a down payment. Desnick agreed that if for any reason he changed his office location, he would continue to pay the percentages listed in the contract on fees generated at the new location.

Lieberman and Kraff fulfilled their obligations under the contract; on January 1, 1981, they turned the Irving Park practice over to Desnick. Lieberman and Kraff ceased to perform professional services at the Irving Park location at this time, but continued to practice else-

where in Chicago. Since January 1, 1981, Lieberman and Kraff have had no affiliation with Desnick, either formal or informal.

In 1982, Desnick moved his office to a new location, 3445 North Central Avenue in Chicago, Illinois. In addition, in 1985, Desnick began practicing at the ambulatory surgical center located at 3101 North Harlem Avenue in Chicago, Illinois. The original practice that Desnick purchased from the plaintiffs in 1981 was a general ophthalmology and optometry practice with no surgical patients. In contrast, the ambulatory center where Desnick now works does provide surgical services. Since 1981, Desnick has opened additional medical offices in Florida, Indiana and Illinois.

Between 1981 and 1985, Desnick adhered to his bargain and made semi-annual payments to the plaintiffs. In 1986, however, Desnick ceased making payments, and he has made no further payments since that time. At the time Desnick ceased making payments, he had paid $825,685 to Lieberman and Kraff.

On December 17, 1986, the plaintiffs filed a two-count complaint against Desnick and his service corporation, James Desnick, M.D., S.C., alleging that Desnick breached his contract by refusing to make the required payments. Desnick responded by filing a counterclaim against Lieberman and Kraff alleging that he had overpaid them for the practice. Desnick also filed a third-party complaint against Howard Feinstein, the attorney who drafted the contract, for indemnification and contribution. During the litigation, Desnick admitted that he had signed the purchase agreement, received the assets of the Irving Park practice and stopped making payments to the plaintiffs after 1985.

On November 21, 1990, Desnick filed a motion for summary judgment. In that motion, Desnick asserted that the purchase agreement was void because it was an illegal fee-splitting agreement that violated the Medical Practice Act and Illinois public policy.

On March 28, 1991, the trial court granted the defendant's summary judgment motion. The court believed that the broad language of this court's decision in *E & B Marketing Enterprises, Inc. v. Ryan* (1991), 209 Ill. App. 3d 626, 568 N.E.2d 339, compelled it to reach this result. Pursuant to Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), the trial court found that there was no just reason to delay enforcement or appeal of the order. This appeal followed.

OPINION

The material facts are not in dispute. The parties admit that they entered into a contract for the sale of a medical practice. Lieberman

and Kraff agreed to sell their practice to Desnick, and Desnick agreed to pay the plaintiffs a percentage of the gross fees he collected for 20 years. The sole issue raised by this appeal is whether the parties' contract violates the Medical Practice Act and/or the public policy of this State. Accordingly, our analysis begins with an examination of the Medical Practice Act.

The Medical Practice Act is a series of regulations directed at physicians and administered by the Department of Registration and Education. It provides in relevant part:

> "The Department may revoke, suspend, place on probationary status, or take any other disciplinary action as the Department may deem proper with regard to the license, certificate or state hospital permit of any person issued under this Act or under any other Act in this State to practice medicine, *** upon any of the following grounds:
>
> * * *
>
> 14. Directly or indirectly giving to or receiving from any physician, person, firm or corporation any fee, commission, rebate or other form of compensation for any professional services not actually and personally rendered. Nothing contained in this subsection prohibits persons holding valid and current licenses under this Act from practicing medicine in partnership *** or in a corporation *** or as an association *** [and] pooling, sharing, dividing or apportioning the fees and monies received ***. Nothing contained in this subsection prohibits 2 or more corporations *** from forming a partnership or joint venture of such corporations, and *** pooling, sharing, dividing, or apportioning the fees and monies received ***. Nothing contained in this subsection shall abrogate the right of 2 or more persons holding valid and current licenses under this Act to receive adequate compensation for concurrently rendering professional services to a patient and divide a fee; provided, the patient has full knowledge of the division, and, provided, that the division is made in proportion to the services performed and responsibility assumed by each." (Ill. Rev. Stat. 1985, ch. 111, par. 4433(14).)[1]

---

[1] The 1987 and 1989 volumes of the Illinois Revised Statutes state that the Medical Practice Act has been repealed. However, under the Regulatory Agency Sunset Act, the repeal does not become effective until December 31, 1997. Thus, the statute, though not reported in the later volumes of the Illinois Revised Statutes, remains in effect. See Ill. Rev. Stat. 1991, ch. 127, par. 1904.9.

Desnick contends that the contract at issue is unenforceable because it contravenes both the language of the Medical Practice Act and the public policy of this State. We agree.

Lieberman and Kraff contend that the sole purpose of the Medical Practice Act is to prohibit conduct commonly known as "fee splitting." Fee splitting occurs when a physician refers a patient to another physician and then collects a portion of that patient's fee. Plaintiffs maintain that they were not engaged in fee splitting or any other conduct which would violate the Medical Practice Act. Plaintiffs argue that under their agreement, the payments to be made by Desnick are consideration for the sale of the medical practice and not compensation for patient referrals. Therefore, plaintiffs maintain that their agreement does not violate the Medical Practice Act. We disagree.

We note initially that our statute does not contain the words "fee splitting." Furthermore, nothing in the language of the statute indicates an intent to restrict the reach of the statute solely to conduct traditionally known as fee splitting. Therefore, the issue of whether or not the parties' agreement falls within the technical definition of "fee splitting" is not relevant. The issue before this court is whether the parties' agreement violates the statute as written.

■■ When read as a whole, the plain language of section 16 of the Medical Practice Act prohibits the sharing, pooling, dividing, or apportioning of professional fees by physicians unless the fee agreement falls within one of the enumerated exceptions. The statute specifically permits physicians who practice within the framework of a partnership, corporation or association to share fees. (Ill. Rev. Stat. 1985, ch. 111, par. 4433(14).) The statute also permits two or more physicians who concurrently render patient care to share fees, provided that the patient has full knowledge of the fee division. (Ill. Rev. Stat. 1985, ch. 111, par. 4433(14).) The broad language of the Medical Practice Act clearly prohibits agreements which can be characterized as fee-splitting agreements. (See *E & B Marketing Enterprises, Inc. v. Ryan* (1991), 209 Ill. App. 3d 626, 568 N.E.2d 339 (agreement which provided that an advertising agency would refer patients to a physician in exchange for 10% of patient billings was void).) However, the reach of the statute is not limited to "fee splitting." The Medical Practice Act also prohibits all other fee-sharing arrangements not specifically authorized.

■■ There can be no doubt that the parties' agreement contemplates fee sharing. The contract obligates Desnick to pay Lieberman & Kraff first 10%, and later 5%, of all fees Desnick collects over 20 years. Furthermore, the fee arrangement does not fall within one of

the exceptions to the statute. Desnick and the plaintiffs have not formed an authorized partnership, corporation, or association. Moreover, Desnick and the plaintiffs are not concurrently rendering patient care. In fact, the plaintiffs are not rendering any professional services to Desnick's patients at all. Nonetheless, the plaintiffs assert that they are entitled to a percentage of the fees collected from all of Desnick's patients for 20 years. In our view, this is one of the types of fee-sharing arrangements that the Medical Practice Act was designed to prohibit.

Moreover, the fact that the purposes behind the parties' agreement may have been benign is of no relevance. The plaintiffs argue at length that they were merely trying to help a young doctor with limited resources and, at the same time, fairly value their medical practice. This court has previously made clear that where an agreement results in fee splitting, the purpose behind the agreement is irrelevant; the agreement is void. (See *E & B Marketing*, 209 Ill. App. 3d at 630.) The reasoning of *E & B Marketing* is equally applicable here.

The plaintiffs next direct our attention to several cases from other jurisdictions which allowed contracts similar to the one at issue to stand. Initially, the plaintiffs urge this court to follow *Wyoming State Board of Examiners of Optometry v. Pearle Vision Center, Inc.* (Wyo. 1989), 767 P.2d 969. In *Pearle*, the Wyoming Supreme Court held that a Wyoming statute which regulates the activities of optometrists did not bar a franchise agreement between an optical products company and an optometrist, even though the franchisor was entitled to a monthly fee of $8\frac{1}{2}\%$ of the optometric services and product sales. (Wyo. Stat. §33—23—110(b)(i) (1977).) We find that *Pearle* can provide no guidance in resolving the dispute before this court; the Wyoming Supreme Court's interpretation of a Wyoming statute has no bearing on the proper interpretation of the Illinois Medical Practice Act.

During oral argument, the plaintiffs brought to our attention the case of *Practice Management Associates, Inc. v. Orman* (Fla. Dist. Ct. App. 1993), 614 So. 2d 1135, which construed the Illinois Medical Practice Act. In *Orman*, several chiropractors who were licensed and practicing in Illinois entered into a contract with Practice Management Associates (PMA), a Florida corporation. The contract provided that PMA would offer advice, education, and counseling to increase the growth and profits of the chiropractor practices. In return, the chiropractors agreed to pay PMA 10% of their weekly gross income or $75 per week, whichever was greater, for a period of 24 months. The contract made no reference to patient referrals or solicitations.

The Florida court of appeals upheld the contract. (*Orman*, 614 So. 2d 1135.) Initially, the court correctly noted that the Illinois Medical Practice Act is unlike many other State statutes because it does not specifically prohibit fee splitting for patient referrals. Moreover, the court observed that the broad language of our State statute may be subject to various interpretations. (*Orman*, 614 So. 2d 1135.) However, the Florida court of appeals then concluded that the Illinois Medical Practice Act was only intended to prohibit traditional fee splitting for patient referrals and did not prohibit the fee-sharing arrangement present in the PMA agreement. (*Orman*, 614 So. 2d 1135.) Lieberman and Kraff urge this court to follow the reasoning of *Orman* and uphold their contract.

We decline to follow *Orman* because we disagree with the Florida court's interpretation of our Medical Practice Act. The language of our statute is very broad. Nothing in the statute indicates an intent to limit the prohibition on fee sharing to a referral context. The fact that many other State statutes prohibit fee sharing specifically in the patient referral context lends supports to our conclusion. These statutes indicate that if a State legislature intends to limit the reach of a fee-splitting prohibition to referrals, it can easily do so. The language of the statute itself is the best indication of the intent of the legislature. (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189, 561 N.E.2d 656.) Our legislature has chosen not to place such a limitation within the Medical Practice Act, and we will not read one into the statute. We hold that the parties' agreement contravenes the provisions of the Illinois Medical Practice Act.

We turn now to the public policy considerations implicated by the parties' agreement. As Lieberman and Kraff correctly assert, the act of selling a medical practice does not violate either the laws or public policies of this State. Plaintiffs argue that the mere fact that the purchase price for their practice was based on a percentage of future revenues should not render an otherwise lawful act unlawful. We disagree.

Although the parties' agreement purported to be a sale, it can be construed to create what is, in effect, a silent partnership. The parties never agreed to a fixed purchase price for the practice. Instead, Desnick agreed to pay the plaintiffs a percentage of future revenues generated by patient fees for 20 years. Under the agreement, Lieberman and Kraff abandoned all responsibility for the care of their patients, but continued to profit from the fees generated by these patients. For 20 years Lieberman and Kraff expected to receive a percentage of patient fees, while completely insulating themselves

from malpractice liability. As previously indicated, the Medical Practice Act does authorize physicians who practice in a partnership, corporation, or association to share fees. However, the entities which are permitted to share fees under the Medical Practice Act are those who in return share a correlative responsibility to the patients. It is our view that the Act does not contemplate that a person or entity which abrogates all ongoing responsibility to the patient should nevertheless share in the fees. Accordingly, we see no reason to insulate a transaction of this nature from the fee-sharing prohibition of the Medical Practice Act.

Affirmed.

GORDON, P.J., and McNULTY, J., concur.