Docket No. 99790.

**IN THE**
**SUPREME COURT**
**OF**
**THE STATE OF ILLINOIS**

VINE STREET CLINIC *et al.*, Appellants and Cross-Appellees, v.
HEALTHLINK, INC., Appellee and Cross-Appellant.

*Opinion filed September 21, 2006.*

JUSTICE KARMEIER delivered the judgment of the court, with
opinion
Chief Justice Thomas and Justices Freeman, Fitzgerald, and
Kilbride concurred in the judgment and opinion.
Justices Garman and Burke took no part in the decision.

**OPINION**

On March 4, 2003, plaintiff Vine Street Clinic (Vine Street) filed
a putative class action lawsuit in Sangamon County against defendant
HealthLink, Inc. (HealthLink), seeking a declaration that the
"percentage fee" provision of the parties' services contract violated
section 22(A)(14) of the Medical Practice Act of 1987 (Act) (225
ILCS 60/22(A)(14) (West 2002)). Vine Street also sought a refund of
all administrative fees paid to HealthLink under the contract. On May
27, 2003, plaintiff Ursula Thatch, M.D., was granted leave to
intervene in this action, and Vine Street and Thatch (plaintiffs) were
allowed to amend their complaint. Plaintiffs' amended complaint
sought a declaration that: (1) the percentage fee violated the Act; (2)
HealthLink's new "flat fee" also violated the Act; and (3) HealthLink

was barred from collecting any administrative fees under the Illinois Insurance Code (Insurance Code) (215 ILCS 5/1 *et seq.* (West 2002)). The amended complaint also sought injunctive relief and recovery of all administrative fees previously paid to HealthLink.

On June 26, 2003, HealthLink filed a verified counterclaim for declaratory relief, seeking a declaration that the flat fee does not violate the Act, and asking the court to enter judgment against plaintiff Thatch for any administrative fees that she owed. On July 30, 2003, the circuit court entered judgment on the pleadings, holding that although HealthLink's former percentage fee violated the Act, its current flat fee did not. The circuit court further held that previously paid monies were not recoverable because any alleged illegal contract was unenforceable. Finally, the court granted defendant's motion to dismiss plaintiffs' counts alleging: (1) the Insurance Code bars HealthLink from collecting administrative fees; and (2) unjust enrichment. Plaintiffs appealed and HealthLink cross-appealed.

The appellate court affirmed the circuit court's ruling with respect to the repayment of fees previously paid, but the majority held that both the flat fee and the previously charged percentage fee were prohibited by the Act. 353 Ill. App. 3d 929. The appellate court did not address plaintiff's argument that HealthLink violated the Insurance Code. Justice Steigmann dissented, arguing that both the percentage and flat fee were permissible. Appeal lies in this court as a result of the appellate court thereafter granting an application for a certificate of importance pursuant to Supreme Court Rule 316 (155 Ill. 2d R. 316). This court has granted leave to file an amicus curiae brief in support of HealthLink to: (1) America's Health Insurance Plans; and (2) the American Federation of State, County and Municipal Employees, AFL-CIO, and Egyptian Area Schools Employee Benefit Trust. We have also granted the Illinois State Medical Society leave to file an *amicus* brief in support of plaintiffs. 155 Ill. 2d R. 345.

Plaintiff Vine Street is a partnership consisting of physicians who render psychiatric services, and plaintiff Thatch is an Illinois physician specializing in obstetrics and gynecology. Defendant HealthLink is an Illinois corporation that enters into participating physician agreements with physicians, and different agreements with those offering other health-care services, thereby creating a network

of health-care providers. HealthLink makes these provider networks available to members of health plans that are offered by insurance carriers, self-funded employer groups, governmental entities and union trusts (collectively payors). Participating physicians agree to provide medical services to payor members at a discounted rate and to send their claims for reimbursement to HealthLink. HealthLink then processes the claims and sends them to the payor for benefit determination and payment. Vine Street was a provider in HealthLink's network from 1989 to 2001, and during that time paid HealthLink a 5% administrative fee that totaled at least $21,720.28. Thatch is a provider in HealthLink's network who, from 1993 until June 30, 2002, paid HealthLink a percentage-based fee totaling $25,079.06.

The Illinois Attorney General is charged with enforcing state law, including the Act, and one duty of the Attorney General is to provide written opinions on legal questions to certain government officers and agencies. 15 ILCS 205/4 (West 2002). In an opinion letter dated March 5, 2002, Attorney General James E. Ryan responded to an inquiry made by Charles A. Hartke, assistant majority leader of the House of Representatives, and concluded that section 3.7 of the HealthLink agreement, requiring each participating physician to pay HealthLink an administrative fee equal to 5% of the amount allowed in HealthLink's rate schedule for services provided to members by the physician, violated section 22(A)(14) of the Act and was therefore void under Illinois law. 2002 Ill. Att'y Gen. Op. No. 02–005, slip op. at 4. On May 30, 2002, HealthLink notified its providers that to comply with the Attorney General's opinion, it would now charge a fixed flat fee instead of the percentage-based fee. HealthLink calculated the flat fee based on two factors: (1) physician speciality; and (2) volume of claims submitted by the physician during the preceding calendar year. HealthLink calculated Thatch's new fixed flat fee at $600 per month. Thatch refused to pay the flat fee. On May 27, 2003, as noted, plaintiffs filed their amended complaint seeking, *inter alia*, a declaration that both the percentage-based fee and the flat fee violated the Act, and the recovery of all fees previously paid.

In this court, HeathLink contends that: (1) neither its flat fee nor its former percentage fee for administrative services violates section

22(A)(14) of the Act; and (2) its administrative fees violate no public policy. Plaintiffs contend herein that: (1) the lower courts erred by allowing HealthLink to retain the administrative fees paid by plaintiffs; (2) if the fees are not returned to plaintiffs, HealthLink should be divested of these fees and the funds applied to benefit the public; and (3) HealthLink was acting as an administrator under the Illinois Insurance Code (215 ILCS 5/1 *et seq.* (West 2002)).

As it is the linchpin issue raised herein, we first address cross-appellant HealthLink's assertion that the appellate court erred in finding that both its percentage and flat fees violated section 22(A)(14) of the Act. Because this issue concerns the construction of a statute, it is a question of law, and our standard of review is *de novo*. *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 80 (2005); *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 128 (2005). The primary rule of statutory construction is to ascertain and give effect to the legislature's "true intent and meaning." *Bowman*, 217 Ill. 2d at 83; *Progressive Universal Insurance*, 215 Ill. 2d at 134. "We determine legislative intent by examining the language of the statute, which is 'the most reliable indicator of the legislature's objectives in enacting a particular law.' " *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002), quoting *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). "A court construing a statute should read it as a whole, give the statutory language its plain meaning, and import to the statute the fullest possible meaning to which it is susceptible." *People v. Ferrell*, 277 Ill. App. 3d 74, 77 (1995). Further, when undertaking the interpretation of a statute, we must presume that when the legislature enacted a law, it did not intend to produce absurd, inconvenient or unjust results. *Progressive Universal Insurance*, 215 Ill. 2d at 134.

Here, the relevant language of the Medical Practice Act of 1987 provides:

> "§22. Disciplinary action.
>
> (A) The Department [of Professional Regulation] may revoke, suspend, place on probationary status, or take any other disciplinary action as the Department may deem proper with regard to the license or visiting professor permit of any person issued under this Act to practice medicine, or to treat

human ailments without the use of drugs and without operative surgery upon any of the following grounds:

\* \* \*

(14) Dividing with anyone other than physicians with whom the licensee practices in a partnership, Professional Association, limited liability company, or Medical or Professional Corporation any fee, commission, rebate or other form of compensation for any professional services not actually and personally rendered." 225 ILCS 60/22(A)(14) (West 2002).

Well-reasoned opinions of the Attorney General interpreting or construing an Illinois statute are persuasive authority and are entitled to considerable weight in resolving a question of first impression, although they do not have the force and effect of law. See *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 399 (1994); see also *City of Springfield v. Allphin*, 74 Ill. 2d 117, 130-31 (1978); *Sparks & Wiewel Construction Co. v. Martin*, 250 Ill. App. 3d 955, 965 (1993). While our appellate court has reviewed the meaning of section 22(A)(14) in somewhat similar contexts to the one presented here, *this court* has never examined the parameters of section 22(A)(14)'s prohibition of percentage fee arrangements involving Illinois licensed physicians, or, more specifically, whether entering into participating physician agreements with a corporation such as HealthLink, which required as an administrative fee a percentage of the amount the physicians received for medical services performed, is violative of section 22(A)(14). We therefore find the reasoning set forth in the Attorney General's March 2002 opinion letter to be useful here in determining the propriety of the lower courts' holdings that the percentage fee set forth in section 3.7 of HealthLink's standard agreement with its participating physicians violated the fee sharing prohibition of section 22(A)(14) of the Act.

Prior to May 30, 2002, section 3.7 of HealthLink's participating physician agreement stated, in pertinent part: "In consideration of the services provided hereunder by HealthLink, each PHO Participating Provider shall pay HealthLink an administrative fee equal to five percent (5%) of the amounts allowed to the PHO Participating Provider under the Rate Schedule for the provision of Medical Services to Members by the Participating Provider." As earlier stated,

the Attorney General's opinion letter concluded that section 3.7 of HealthLink's participating provider agreement was in violation of section 22(A)(14) of the Act. The Attorney General's finding was essentially based upon several Illinois Appellate Court opinions which the Attorney General found had "construed subsection 22(A)(14) to prohibit payments by physicians for management or other services based upon a percentage of professional income." 2002 Ill. Att'y Gen. Op. No. 02–005, slip op. at 3.

In the earliest of these cases, *E&B Marketing Enterprises, Inc. v. Ryan*, 209 Ill. App. 3d 626 (1991), a marketing firm agreed to promote the name and practice of a physician engaged in private practice, primarily to insurance carriers, in return for a consulting fee of 10% on all billings collected by the physician in connection with such referrals. The appellate court held that the agreement was a fee splitting contract, in violation of section 16(14) of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4433(14)), and was therefore void as against public policy. *E&B Marketing*, 209 Ill. App. 3d at 628-30. The fact that the contracting physician collected the fees from insurance companies, rather than from individual patients, had no effect upon the illegality of the underlying fee splitting contract. *E&B Marketing*, 209 Ill. App. 3d at 629-30.

Although not noted by the Attorney General, *E&B Marketing* was clearly based on section 16(14) of the Medical Practice Act, which is not identical to section 22(A)(14) of the Medical Practice Act of 1987. Rather section 16(14) stated that anyone licensed or certified under the Medical Practice Act was subject to disciplinary action for: "Directly or indirectly giving to or receiving from any physician, person, firm or corporation any fee, commission, rebate or other form of compensation for any professional services not actually and personally rendered." Ill. Rev. Stat. 1985, ch. 111, par. 4433(14). Section 16(14) further stated that nothing therein prohibited those licensed under the Act from practicing medicine in a partnership, corporation or as an association and "pooling, sharing, dividing or apportioning the fees and monies received." Ill. Rev. Stat. 1985, ch. 111, par. 4433(14). The Medical Practice Act was repealed effective December 31, 1997. See *E&B Marketing*, 209 Ill. App. 3d at 629 n.1.

Thus, it was based on this earlier statutory language that the court in *E&B Marketing* found: "The Act, in its plain terms, prohibits the

receipt of any fee or commission, direct or indirect, for professional services not actually rendered. E&B's receipt of money 'indirectly' through insurance companies was in direct violation of the Act." *E&B Marketing*, 209 Ill. App. 3d at 629-30. We must therefore ask whether the differences between the language of the now-repealed section 16(14) and the language of section 22(A)(14) affect the Attorney General's finding that HealthLink's percentage-based fee violates the current Act. A comparison of the two sections reveals that, of the portion at issue here, only the language in the first phrase of the first sentence has been changed. Section 16(14) begins: "Directly or indirectly giving to or receiving from any physician, person, firm or corporation any fee ***," whereas section 22(A)(14) begins: "Dividing with anyone other than physicians with whom the licensee practices in a partnership, Professional Association, limited liability company, or Medical or Professional Corporation any fee ***."

Examining the plain language of these two sections, we find that they both prohibit traditional "fee splitting," *i.e.*, "a dividing of a professional fee for a specialist's medical services with the recommending physician," (Webster's Third New International Dictionary 835 (1986)), as well as prohibiting the sharing of such a fee with any other "person, firm or corporation" (Ill. Rev. Stat. 1985, ch. 111, par. 4433(14)). The phrases at issue appear to differ only in that the legislature moved to the first sentence of section 22(A)(14) the language setting forth, in more inclusive terms, the exemption from the fee sharing prohibition for those physicians practicing in a "partnership, Professional Association, limited liability company, or Medical or Professional Corporation." 225 ILCS 60/22(A)(14) (West 2002). Therefore, we conclude that the Attorney General's analysis of the issue before us was not affected by the slightly different language of now-repealed section 16(14).

Support for this conclusion comes from comparing the remaining cases examined by the Attorney General. In *Lieberman & Kraff, M.D., S.C. v. Desnick*, 244 Ill. App. 3d 341 (1993), which also construed the language of section 16(14), the appellate court invalidated a contract for the sale of a medical practice which provided compensation to the seller over a 20-year period, holding that the contract was an illegal fee-sharing agreement, regardless of

the fact that the purpose of the contract was benign. In similar fashion to *E&B Marketing*, the court in *Lieberman & Kraff*, 244 Ill. App. 3d at 345, found that "nothing in the language of the statute indicates an intent to restrict the reach of the statute solely to conduct traditionally known as fee splitting," *i.e.*, that which occurs "when a physician refers a patient to another physician and then collects a portion of that patient's fee." Rather, the issue is whether the parties' agreement violates the statute as written. *Lieberman & Kraff*, 244 Ill. App. 3d at 345.

> "When read as a whole, the plain language of section 16 of the Medical Practice Act prohibits the sharing, pooling, dividing, or apportioning of professional fees by physicians unless the fee agreement falls within one of the enumerated exceptions. The statute specifically permits physicians who practice within the framework of a partnership, corporation or association to share fees. (Ill. Rev. Stat. 1985, ch. 111, par. 4433(14).) *** However, the reach of the statute is not limited to 'fee splitting.' The Medical Practice Act also prohibits all other fee-sharing arrangements not specifically authorized." *Lieberman & Kraff*, 244 Ill. App. 3d at 345.

Nine months later, the appellate court decided *Practice Management Ltd. v. Schwartz*, 256 Ill. App. 3d 949, 952 (1993), a case which reviewed a percentage-fee agreement for management services and the referral of patients between, *inter alios*, plaintiff, a business which employed unlicensed optometrists, and defendants, two licensed ophthalmologists, under "the pertinent section of the Illinois Medical Practice Act of 1987 (Act) (225 ILCS 60/22(A)(14) (West 1992))." We first observe that the court in *Schwartz* actually erred in basing its decision on section 22(A)(14) of the Medical Practice Act of 1987, where, as the *Lieberman & Kraff* court noted, "under the Regulatory Agency Sunset Act, the repeal [of the Medical Practice Act] does not become effective until December 31, 1997. Thus, the statute *** remains in effect. See Ill. Rev. Stat. 1991, ch. 127, par. 1904.9." *Lieberman & Kraff*, 244 Ill. App. 3d at 344 n.1. However, as we have previously found, the differences in the language of section 16(14) and section 22(A)(14) do not, for our purposes, change the analysis of whether a prohibited fee arrangement occurred. The *Schwartz* court held that the fee

agreement was improper, even though some legitimate management services were performed by the unlicensed optometry business, because the agreement allowed the business to be compensated through a percentage of the net profits generated by the licensed physicians, and the Act prohibits not only fee splitting, but all other fee-sharing arrangements not specifically authorized therein. *Schwartz*, 256 Ill. App. 3d at 953-55, citing *Lieberman & Kraff*, 244 Ill. App. 3d at 345.

Finally, in *TLC The Laser Center, Inc. v. Midwest Eye Institute II, Ltd.*, 306 Ill. App. 3d 411 (1999), the appellate court held that a service contract violated section 22(A)(14) because it provided, in part, for an annual fee to be paid by the defendant medical practice to the plaintiff, an unlicensed corporation, in addition to specific reimbursements. Although the fee was not calculated on a straight percentage, the court found a "direct relation" between the revenues generated by the practice and the fee the physicians were required to pay to plaintiffs. *TLC*, 306 Ill. App. 3d at 428. With respect to this fee arrangement, the *TLC* court observed:

> "Section 22 of the Medical Practice Act does not only prohibit sharing of fees for patient referrals; Illinois courts have struck down contracts for the sale of a medical practice (see *Lieberman & Kraff v. Desnick*, 244 Ill. App. 3d 341, 614 N.E.2d 379 (1993)) and contracts which involved 'performance of some legitimate management services' (see *Practice Management Ltd. v. Schwartz*, 256 Ill. App. 3d 949, 954, 628 N.E.2d 656 (1993)) on the basis that the contracts ran afoul of the statute. The '*** Medical Practice Act also prohibits all other fee-sharing arrangements not specifically authorized.' *Lieberman & Kraff*, 244 Ill. App. 3d at 345, 614 N.E.2d at 382. The policy reasons behind the prohibition are the danger that such an arrangement might motivate a nonprofessional to recommend a particular professional out of self-interest, rather than the professional's competence. In addition, the judgment of the professional might be compromised, because the awareness that he would have to split fees might make him reluctant to provide proper (but unprofitable) services to a patient, or, conversely, to provide unneeded (but profitable) treatment. *Practice Management*,

-9-

256 Ill. App. 3d at 953, 628 N.E.2d at 658, quoting *E&B Marketing Enterprises, Inc. v. Ryan*, 209 Ill. App. 3d 626, 630, 568 N.E.2d 339, 342 (1991)." *TLC*, 306 Ill. App. 3d at 427-28.

It is evident from this quotation that the reasoning used by the *TLC* court to find a violation of section 22(A)(14) of the Act was the same reasoning applied in prior appellate court decisions which were, or should have been, made under the previous, but equivalent, section 16(14) of the Medical Practice Act. Thus, the Attorney General reasonably relied on this unchanging line of Illinois cases to conclude that HealthLink's participating physician agreement, which included a percentage fee for its services, was violative of section 22(A)(14) of the Act and therefore void under Illinois law. While we believe the Attorney General's opinion letter is entitled to considerable weight, it is not binding on the courts (*Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d at 399), and thus should be considered in light of the arguments raised by the parties herein.

HealthLink claims that we should follow *Practice Management Associates, Inc. v. Orman*, 614 So. 2d 1135 (Fla. App. 1993), a Florida case construing section 22(A)(14)[1] and holding that it did not preclude physicians from agreeing to pay a percentage of their profits to an unlicensed entity in exchange for marketing and management services provided by that entity. As the Attorney General's opinion points out, several of the decisions from our appellate court specifically disagreed with *Orman*, finding that while the Florida court interpreted our Act to prohibit only traditional fee splitting, the language of our statute is broad and nothing therein evinces an intent by our legislature to limit the prohibition to unaffiliated physicians. See *Schwartz*, 256 Ill. App. 3d at 952-54; *Lieberman & Kraff*, 244 Ill. App. 3d at 347. We too cannot agree with the Florida court that the intent of section 22(A)(14) "is to prohibit fee splitting for patient referrals in the traditional sense and that the [nonprofessional corporation's percentage-fee based] contract does not fall within the conduct proscribed." *Orman*, 614 So. 2d at 1138.

---

[1]We again note that it was section 16(14), and not section 22(A)(14), which was in effect in 1993, when *Orman* was decided.

Next, we examine an alternative argument made by plaintiffs which not only is without merit, but which also unnecessarily confuses those attempting to construe section 22(A)(14) of the Act. Plaintiffs contend that the meaning of "professional services" in section 22(A)(14) is not limited only to *medical* services, as this interpretation ignores the term "anyone" in the phrase "[d]ividing with anyone." Indeed, plaintiffs' reply brief states that the legislature intended section 22(A)(14) to prohibit the division of fees between licensees and "*any* other individual or entity that may render professional services." (Emphasis in original.) We disagree.

Under the interpretation of section 22(A)(14) which we have now adopted, the conduct which the legislature seeks to prohibit is the agreement by a licensee to share a percentage of the fees he or she earned for "professional services *** actually and personally rendered," with "anyone," "other than physicians with whom the licensee practices." 225 ILCS 60/22(A)(14) (West 2002). This interpretation contemplates that words and phrases should not be construed in isolation, as plaintiffs' argument necessitates, but must be interpreted in light of "other relevant provisions of the statute." *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 238 (2004), citing *Michigan Avenue National Bank*, 191 Ill. 2d at 504.

Here, our examination of the entirety of section 22 and another section of the Act supports our holding that only the sharing of a percentage of the licensee's fees for *medical* "professional services not actually and personally performed" by the licensee was meant to be prohibited. First, the final sentence of section 22(A)(14) itself reads:

> "Nothing contained in this subsection shall abrogate the right of 2 or more persons, holding valid and current licenses under this Act, to each receive adequate compensation for concurrently rendering *professional services* to a patient and divide a fee; provided, the patient has full knowledge of the division, and, provided, that the division is made in proportion to the services performed and responsibility assumed by each." (Emphasis added.) 225 ILCS 60/22(A)(14) (West 2002).

Next, section 22(A)(25) states that another ground for disciplinary action occurs when a licensee commits: "Gross and wilful and continued overcharging for *professional services*, including filing false statements for collection of fees for which services are not rendered \*\*\*." (Emphasis added.) 225 ILCS 60/22(A)(25) (West 2002). Finally, section 26 of the Act, entitled "Advertising," states: "Any person licensed under this Act may advertise the availability of *professional services* in the public media or on the premises where such *professional services* are rendered." (Emphases added.) 225 ILCS 60/26(1) (West 2000).

These "other relevant provisions of the statute" corroborate our determination that the plain meaning of "professional services" in section 22(A)(14) of the Act encompasses only *medical* services. See *Alternate Fuels*, 215 Ill. 2d at 238; see also *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 106 (2005) (courts should consider a statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it). Thus, "[b]y definition, it is impossible for a nonphysician to render 'professional services' to a patient." 353 Ill. App. 3d at 935. We therefore reject plaintiffs' claim that section 22(A)(14) was meant to prohibit the division of fees between licensees and *any* other individual or entity that may render professional services under the Act, as "professional services" cannot be performed by anyone other than those licensed to practice medicine.

As earlier noted, examining the language of the statute is the best indicator of the legislature's intent in enacting a particular law. *In re Detention of Lieberman*, 201 Ill. 2d at 308. In section 22(A) of the Act, the legislature sets forth a number of grounds upon which the Department of Professional Regulation may take disciplinary action with regard to the license of, *inter alios*, "any person issued under this Act to practice medicine." 225 ILCS 60/22(A) (West 2002). One of these grounds for disciplinary action, deliniated in section 22(A)(14), involves: "Dividing with *anyone* other than physicians with whom the licensee practices in a partnership, \*\*\* any fee, commission, rebate or other form of compensation *for any professional services not actually and personally rendered*." (Emphases added.) 225 ILCS 60/22(A)(14) (West 2002).

Based on the foregoing, we conclude that plaintiffs main argument is correct; *i.e.*, that section 22(A)(14) of the Act prohibits: (1) "traditional" fee splitting for patient referrals between licensees, except those in a partnership or corporate-type relationship and licensees concurrently rendering professional services to a patient; and (2) fee-sharing agreements whereby a licensee "divides with anyone," for any service rendered to the licensee, *a percentage of the monies earned by the licensee for medical services he or she has performed.* 225 ILCS 60/22(A)(14) (West 2002). Thus, where HealthLink's agreement with plaintiffs required them to pay HealthLink an administrative fee, equal to 5% of the amounts allowed in HealthLink's rate schedule for medical services provided to members by plaintiffs, the agreement was in violation of section 22(A)(14). "Nonphysicians can receive a fee for services rendered, apart from referral, but cannot receive a percentage of the physician's profit, or its equivalent." 353 Ill. App. 3d at 935. We therefore hold that the lower courts herein, as well as the Attorney General, properly found that HealthLink's percentage-fee based contract with plaintiffs was void as against Illinois law.

Next, we examine HealthLink's contention that the appellate court erred in holding that the Act *also* prohibits HealthLink's fixed flat fee, which was established in response to the Attorney General's opinion. The appellate court reasoned, in part, as follows:

> "HealthLink argues the flat fee currently paid by physicians is for administrative services, such as administrating and implementing HealthLink's policies, procedures, and programs, and not for patient referrals.
>
> *** [However,] [t]he fact that HealthLink does not technically refer a member-patient to a specific provider does not negate the fact that HealthLink exercises substantial control over its member-patients." 353 Ill. App. 3d at 935.

We agree with HealthLink that the flat fee now in place is for administrative services and not for patient referrals. Therefore, the appellate court's similar conclusion, that HealthLink does not make patient referrals to specific providers, appears at odds with its additional finding that there is no "significant difference" between making a network of thousands of physicians available to payors for use by member-patients, as HealthLink does, and making an

-13-

agreement with certain physicians to send them specific patients. 353 Ill. App. 3d at 935. It is the member-patient who makes the choice of physician, not HealthLink, and this fact constitutes the difference between a prohibited referral for a percentage of the physician's fee and the provision of a service to both HealthLink's participating physicians and its payors. See *Schwartz*, 256 Ill. App. 3d at 954 (although plaintiffs provided legitimate management services, the method of payment for these services was improper, as were the patient referrals, where plaintiffs *referred* patients of the optometrists the company employed to specific opthalmologists for medical services which only a licensed physician could provide).

In the instant case, this court has concluded that HealthLink's percentage fee was violative of section 22(A)(14) because the agreement required participating physicians to pay HealthLink a portion of the fee they received from each patient for medical services they performed. As the Attorney General stated in the addendum to his opinion letter, "it has not been suggested that the object of the agreement is violative of public policy, or that the services that Healthlink provides are improper in any way. The only aspect of the agreement found invalid *** was the basis upon which the fees for the administrative services performed under the agreement are calculated." 2002 Ill. Att'y Gen. Op. No. 02–005, Addendum, slip op. at 2. Accordingly, HealthLink amended its participating physician agreements to allow a flat fee for administrative services to be paid monthly on a basis *independent* of the physician's fees.

HealthLink's flat fee is not based or linked to revenue, gross receipts or billings collected. Instead, it is based on the volume of claims that HealthLink processed for a physician during the prior year and the physician's specialty. For example, a participating physician who submitted a large number of claims for relatively inexpensive procedures and who made a modest income might pay a *higher* administrative fee to HealthLink than a physician in the same specialty who submitted fewer claims, but for more expensive procedures, and who earned a higher income. Because a higher volume of claims or a more complicated specialty translates into a higher volume of work for HealthLink, the flat-fee arrangement now

charged to participating physicians fairly compensates HealthLink without being a prohibited division of the physician's remuneration.

Thus, the appellate court erred in comparing HealthLink's flat fee, based on *claims* volume, with the fee charged by the nonprofessional entity in *TLC*, which was based on *revenue* volume. 353 Ill. App. 3d at 937; see *TLC*, 306 Ill. App. 3d at 428 (although the contract did not structure the annual fee in literal terms of a percentage of the practice's revenue *per se*, the fee clearly increased as the revenues increased). Here, in contrast, because HealthLink's flat fee is based on the volume and complexity of the administrative services provided, the fee will *not* automatically increase as the revenue of the participating physician increases. We therefore find that where HealthLink's monthly flat fee does not constitute prohibited fee sharing, it is not violative of section 22(A)(14).

As to plaintiffs' claim that the flat fee is against public policy, we first note that the general purpose of the Medical Practice Act of 1987 is to protect the public health and welfare from those not qualified to practice medicine. *Ikpoh v. Department of Professional Regulation*, 338 Ill. App. 3d 918, 926 (2003), citing *Carter-Shields v. Alton Health Institute*, 201 Ill. 2d 441, 458 (2002). Further, we have established that the goal of section 22(A)(14) is to prevent persons licensed under the Act from sharing a percentage of their fees with anyone except those licensees specifically set forth. The underlying purpose of this prohibition, as earlier noted, is to eliminate the danger of a nonprofessional recommending a particular physician out of self-interest, rather than the physician's competence, and to maintain the professional independence of physicians. See *TLC*, 306 Ill. App. 3d at 427.

As to the former danger to the public, HealthLink's flat fee is charged to each participating physician for administrative services rendered, not for referrals and, thus, no "recommendation" component exists. As for the latter danger, in *Schwartz*, the appellate court held "fee-splitting arrangements" violated public policy by creating a danger that: " 'a doctor, knowing that he had to split his fees with one who did not render medical services, might be hesitant to provide proper services to a patient. Conversely, unneeded treatment might be rendered just because of the need to split fees.' "

*Schwartz*, 256 Ill. App. 3d at 953, quoting *E&B Marketing*, 209 Ill. App. 3d at 630. Here, however, HealthLink's flat-fee agreement places no such improper influence on the professional choices made by its participating physicians, because it does not require a sharing of professional fees which would relate patient care to an increase or decrease in revenue.

> " 'An agreement is against public policy if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or is at war with the interests of society or is in conflict with the morals of the time.' " *E&B Marketing*, 209 Ill. App. 3d at 630, quoting *Marvin N. Benn & Associates, Ltd. v. Nelsen Steel & Wire, Inc.*, 107 Ill. App. 3d 442, 446 (1982).

Given our conclusion that HealthLink's flat-fee agreement does not contravene any public policy underlying section 22(A)(14), we opine that the agreement also meets the *E&B Marketing* test set forth above.

Finally, we note that plaintiffs' definition of "professional services," which we earlier rejected, makes no more sense in a flat-fee context. Because HealthLink's provision of administrative services to plaintiffs does not encompass *medical* "professional services" within the meaning of the Act, no violation of section 22(A)(14) can occur. This reading of section 22(A)(14) gives the statutory language its plain and ordinary meaning without reading into it exceptions, limitations or conditions which conflict with the express legislative intent. See *Alternate Fuels*, 215 Ill. 2d at 238. Accordingly, we hold that the flat fee HealthLink now charges its participating physicians for administrative services which HealthLink performs for them is not violative of section 22(A)(14) of the Act, nor is it against public policy.

Next, we address plaintiffs' contention that the lower courts erred in allowing HealthLink to retain the percentage and flat fees it previously collected from plaintiffs. We agree with the lower courts herein that plaintiffs are not entitled to recover any fees previously paid, be they percentage-based or flat fees. 353 Ill. App. 3d at 937.

The lower courts' decision not to reimburse plaintiffs for the fees paid pursuant to their HealthLink contracts reflects the maxim that "the law will not aid either party to an illegal act, but will leave them without remedy as against each other," with the caveat that they are of equal knowledge, wilfulness and wrongful intent, or *in pari delicto*. *Rees v. Schmits*, 164 Ill. App. 250, 258 (1911); see also *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 33-34 (2005) (the doctrine of *in pari delicto* embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing). Plaintiffs argue that the lower courts failed to recognize that two of the exceptions to the availability of the *in pari delicto* defense are present in this case where: (1) there is no parity in the culpability of the parties; and (2) there exists a necessity to support the public interest or policy. See *Evans v. Funk*, 151 Ill. 650, 657-58 (1894). We find that neither exception exists under the facts of this case.

As to the first exception, plaintiffs claim they are only seeking to be restored to the status quo, and that they are not *in pari delicto* with HealthLink, because they were coerced into signing the contracts in order to have access to patients. Yet we see nothing of record to suggest that the agreements were anything other than arm's-length transactions between HealthLink and plaintiffs. Thus, we concur with the appellate court's finding that: "This is not a case *** where anyone 'held a gun' to plaintiffs' heads. Plaintiffs could have sought relief from the courts, the Attorney General, or the Department of Professional Regulation at any time." 353 Ill. App. 3d at 937. Further, it is the plaintiffs, as licensees under the Act, who have violated section 22(A)(14), not HealthLink. 353 Ill. App. 3d at 938, citing *TLC*, 306 Ill. App. 3d at 428-29 ("the physician is the wrongdoer" under the Act).

We are similarly unimpressed with plaintiffs' related argument that the voluntary payment doctrine should not apply because the fees were paid to HealthLink under circumstances amounting to compulsion. Plaintiffs have not alleged that the money paid to HealthLink was a result of fraud, misrepresentation or mistake of fact. Instead, plaintiffs argue the agreements were illegal and against public policy. However, money voluntarily paid under a claim of

right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because the claim was illegal. *Kanter & Eisenberg v. Madison Associates*, 116 Ill. 2d 506, 512 (1987); see also *Harris v. Johnson*, 218 Ill. App. 3d 588, 594 (1991) (if a party has advanced money under an agreement that is against public policy, that party cannot obtain redress); *Evans v. Funk*, 38 Ill. App. 441, 444 (1890) ( "No rule of law is better settled than that money voluntarily paid in consideration of the payee doing, or agreeing to do, something opposed to public policy, can not be recovered back").

Therefore, we find ourselves in agreement with the appellate court's reasoning (353 Ill. App. 3d at 937), which relied on the following passage from *Practice Management v. Schwartz*:

> "Where a contract is illegal or against public policy, the contract should not be enforced, because to allow such relief would undermine the policy considerations in prohibiting fee splitting. (*O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, 537 N.E.2d 730; *Schnackenberg v. Towle* (1954), 4 Ill. 2d 561, 123 N.E.2d 817). In order to discourage professionals and nonprofessionals from attempting illegal fee splitting, the court will leave the parties where they have placed themselves. *Leoris v. Dicks* (1986), 150 Ill. App. 3d 350, 501 N.E.2d 901." *Schwartz*, 256 Ill. App. 3d at 955.

In the instant case, where we have found the percentage-based fee agreement between plaintiffs and HealthLink to have violated the broad prohibition against sharing fees set forth in section 22(A)(14), the proper course is for the parties to be left "where they have placed themselves." 353 Ill. App. 3d at 937.

We also reject plaintiffs' contention that HealthLink is prohibited from retaining fees paid under the agreements because the necessity to support public policy prevents defendants from using *in pari delicto* as a defense. It is true that in *Evans*, 151 Ill. at 657, this court stated that "this general rule has its exceptions, arising out of necessity or from unyielding principles of public policy, or from the different conditions of the parties." However, the exception to the use of the *in pari delicto* defense in *Evans* stemmed "from the strongest

necessity of upholding the principles of public policy, in maintaining the purity and honor of the courts of justice free from all scandal or suspicion of improper conduct on the part of the judges." *Evans*, 151 Ill. at 658.

Traditionally, and in keeping with the principle of freedom of contract, this court has been reluctant to declare a private contract as void as contrary to public policy. *H&M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 209 Ill. 2d 52, 57 (2004).

> "In considering whether any contract is against public policy it should be remembered that it is to the interests of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts. Agreements are not held to be void, as being contrary to public policy, unless they be clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless they be manifestly injurious to the public welfare." *Schumann-Heink v. Folsom*, 328 Ill. 321, 330 (1927).

See also *H&M Commercial Driver*, 209 Ill. 2d at 57. Thus, we believe that *Evans* is an example of the extreme circumstances needed to forego the general rule of *in pari delecto*, *i.e.*, where the public welfare must be protected from manifest injury. The same vehement need to support public policy by forcing HealthLink to refund the illegal percentage-based fees paid by plaintiffs is absent here.

Regarding HealthLink's flat fees, as Justice Steigmann stated in his partial dissent below: "[T]he goal of the Act is to regulate the licenses of physicians, not to prevent them from entering into legitimate contracts or relieve them of the corollary duty to pay for services *** rendered pursuant to such contracts." 353 Ill. App. 3d at 941 (Steigmann, J., specially concurring in part and dissenting in part). Thus, where we have found that HealthLink's flat fee is neither illegal nor against public policy, the parties' agreements requiring payment by plaintiffs of a fixed monthly amount for administrative services must be upheld.

Moreover, we need not address plaintiffs alternative request that, if this court declines to return the fees to plaintiffs, "the Court [should] draw upon its equitable powers to require [HealthLink] to

fully account for and then apply the illegal fees toward a public fund or charity." This request stems from plaintiffs' belief that allowing HealthLink to keep its collected fees has a more deleterious effect on public policy and the prohibition against physician fee sharing than does returning those monies to plaintiffs. However, as we have found that HealthLink's percentage fees can be retained by virtue of the *in pari delicto* defense, and that its flat fees do not violate either the Act or public policy, no further consideration is necessary. Additionally, we note that, even had we the desire to examine this contention, it is not properly brought here where plaintiffs have failed to: (1) raise it at any time in the lower courts (*People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78, 90-91 (1994) (issues not raised in either the trial court or the appellate court are considered waived and may not be raised for the first time on appeal to this court); or (2) cite any authority for this novel remedy (*People v. Ward*, 215 Ill. 2d 317, 332 (2005) (a point raised in a brief but not supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(e)(7), and is thus forfeited).

Plaintiffs additionally claim that HealthLink is an "Administrator" as that term is defined in sections 511.101 and 370g(g) of the Insurance Code (215 ILCS 5/511.101, 370g(g) (West 2002)), and that under these definitions HealthLink violated the Code by collecting unauthorized fees from health-care providers. As earlier noted, although plaintiffs raised this issue on direct appeal, it was not considered by the appellate court. We choose to briefly address the issue in the interest of judicial economy (*People v. Wilson*, 143 Ill. 2d 236, 249 (1991), as we may dispose of it without examining the merits of plaintiffs' argument. Plaintiffs are without standing to seek the return of administrative fees under the Code because such a private right of action is not available. See *Weis v. State Farm Mutual Automobile Insurance Co.*, 333 Ill. App. 3d 402, 406 (2002) (the enforcement of the insurance rules was clearly delegated to the Department of Insurance and, as such, a plaintiff cannot plead or pursue a private action based on an insurer's violation of these rules); 215 ILCS 5/401 through 407 (West 2004); see also *Village of McCook v. Illinois Bell Telephone Co.*, 335 Ill. App. 3d 32, 36 (2002). Accordingly, where this count of plaintiffs' complaint does

not allege a valid cause of action, we affirm its dismissal by the circuit court.

Thus, based upon the foregoing, we agree with the appellate court's holdings that HealthLink's percentage based fee violates section 22(A)(14) of the Act, and that plaintiffs cannot recover any monies paid pursuant to their participating provider agreements with HealthLink. However, we disagree with the appellate court's finding that the fixed flat fee charged to plaintiffs by HealthLink violates section 22(A)(14) of the Act or this state's public policy. Additionally, we find plaintiffs' claim that HealthLink should be required to divest itself of any fees paid by plaintiffs was forfeited, and that plaintiffs' claim that those fees should be returned to them based on a violation of the Illinois Insurance Code was properly dismissed.

The appellate court's judgment is affirmed in part and reversed in part, and the circuit court's judgment is affirmed.

*Appellate court judgment affirmed*
*in part and reversed in part;*
*circuit court judgment affirmed.*

JUSTICES GARMAN and BURKE took no part in the consideration or decision of this case.