No. 3–09–0033

Filed December 16, 2009

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| KEPPLE AND COMPANY, INC., an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 07-CH-572 |
| CARDIAC, THORACIC AND ENDOVASCULAR THERAPIES, S.C., an Illinois Corporation, and DEBRA S. HAWLEY, Individually, | ) ) ) ) | Honorable Stuart Borden, |
| Defendants-Appellees. | ) ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

Plaintiff, Kepple & Company, Inc. (Kepple), brought suit against defendant, Cardiac, Thoracic, and Endovascular Therapies, S.C. (Cardiac Thoracic), for breach of contract. Cardiac Thoracic filed a motion for summary judgment alleging, among other things, that the contract in question was void and unenforceable because it violated the fee-sharing prohibition of the Medical Practice Act of 1987 (225 ILCS 60/22(A)(14) (West 2008)) (the Act). After a hearing, the trial court granted the motion. Kepple appeals, arguing that the trial court erred in granting summary judgment for Cardiac Thoracic on Kepple's breach of contract claim. We affirm the trial court's ruling.

FACTS

Kepple was a corporation that provided medical billing and collection services and was owned by Michael Kepple. In September of 2003, Kepple entered into a contract (the services contract) with

Cardiac Thoracic. Cardiac Thoracic was a corporation that provided certain medical services and was owned by Dr. James Williams, M.D., a doctor who specialized in cardiac and thoracic surgery. Of relevance to this appeal, the services contract contained the following provisions: (1) a fee-sharing clause, which provided that Kepple would perform medical billing and collection services for Cardiac Thoracic in return for "5% of gross receipts collected for medical services provided by [Cardiac Thoracic]"; (2) a no-hire, nonsolicitation and noncompetition clause, which provided that neither corporation would solicit the other's corporation's employees or hire the other corporation's employees without a release from that corporation or establish or participate in the ownership of a competing business (hereinafter referred to as the no-hire clause, the nonsolicitation clause, and the noncompetition clause, respectively); (3) a severability clause, which provided that if any provision of the services contract was found to be unlawful, the remaining provisions of the services contract would still remain in full force and effect; and (4) an indemnification clause, which allowed Kepple to recover its attorney fees and other litigation costs resulting from a breach of the services contract by Cardiac Thoracic.

Cardiac Thoracic's account at Kepple was serviced by Debra S. Hawley, an employee and vice president of Kepple. Hawley was the sole person at Kepple responsible for Cardiac Thoracic's account. Hawley had entered into an employment contract (the employment contract) with Kepple. The employment contract contained a noncompetition clause, which prohibited Hawley from seeking employment from a competitor of Kepple's within a specific geographic area for one year after the termination of the employment contract. A competitor was defined in the employment contract as any business that derived more than 50% of its revenue from medical billings.

By August 2, 2006, Dr. Williams had grown increasingly dissatisfied with the level of service

provided to Cardiac Thoracic by Kepple and had communicated his complaints to Kepple in that regard. On August 3, 2006, Hawley met with Dr. Williams to discuss those complaints. Two days after their meeting, on August 5, 2006, Hawley notified Kepple, as required in the employment contract, that she was resigning from Kepple effective November 3, 2006. On September 13, 2006, Cardiac Thoracic notified Kepple, as required in the services contract, that it was terminating its business relationship with Kepple effective November 10, 2006.

On November 13, 2006, Hawley began working for Cardiac Thoracic. When Kepple learned of Hawley's new employment, it filed the instant action against both Cardiac Thoracic and Hawley, alleging that each defendant had breached their respective contracts with Kepple.[1] While the case was pending in the trial court, Kepple sought a preliminary injunction to prevent Cardiac Thoracic from continuing to employ Hawley. After an evidentiary hearing, the trial court denied that request. In so doing, the trial court made numerous findings and conclusions, which can be summarized as follows: (1) Cardiac Thoracic did not qualify as a competing business of Kepple's as defined in the employment contract; (2) since Cardiac Thoracic was not a competing business, Hawley did not violate the noncompetition clause of the employment contract by going to work for Cardiac Thoracic; (3) the no-hire clause of the services contract was unenforceable because it did not contain a time limitation; (4) despite Kepple's request, the trial court would not read a one-year time limitation into the no-hire clause of the services contract; (5) Cardiac Thoracic did not induce Hawley to resign from

---

[1]Kepple brought one count against Cardiac Thoracic for breach of the services contract and a second count against Hawley for breach of the employment contract. The record on appeal is not quite clear as to whether Kepple voluntarily dismissed its claim against Hawley or whether summary judgment was granted as to the claim against Hawley as well. In any event, Kepple has not raised any argument on appeal regarding its claim against Hawley and no issue regarding that claim is before this court.

her employment at Kepple; (6) Cardiac Thoracic did not hire Hawley while she was still an employee of Kepple; (7) Cardiac Thoracic did, however, solicit Hawley to become an employee of Cardiac Thoracic while Hawley was still an employee of Kepple; (8) Cardiac Thoracic's solicitation of Hawley was likely a breach of the nonsolicitation clause of the services contract; and (9) although Cardiac Thoracic had likely breached the services contract by its solicitation of Hawley, Kepple had an adequate remedy at law for that breach in the form of money damages.

Kepple filed an interlocutory appeal to challenge the trial court's denial of its request for a preliminary injunction against Cardiac Thoracic. This court affirmed the trial court's ruling in an unpublished order and remanded the case for further proceedings. Kepple & Co. v. Cardiac, Thoracic & Endovascular Therapies, S.C., No. 3-07-0865 (2008) (unpublished order under Supreme Court Rule 23).[2] In so doing, this court found that: (1) the no-hire clause in the services contract was unenforceable as written; (2) the trial court properly refused to modify the services contract to add a one-year limitation that would apply to the no-hire clause; (3) the record supported the trial court's conclusion that Hawley did not violate the contractual terms; (4) the record supported the trial court's conclusion that Cardiac Thoracic had breached the solicitation clause of the services contract; and (5) Kepple had an adequate remedy at law for Cardiac Thoracic's breach of the services contract in the form of money damages, if any, that were incurred as a result of Cardiac Thoracic's solicitation of Hawley while she was still employee of Kepple.

On remand, relying upon the evidence presented at the preliminary injunction hearing and the rulings of the trial court and this court on that issue, defendants filed a motion for summary judgment

_____

[2]The evidence presented at the hearing on Kepple's motion for preliminary injunction was set out extensively in the order entered by this court on interlocutory appeal. Those facts have only been repeated here to the extent necessary to resolve the issue raised in this appeal.

4

as to each count of Kepple's complaint for breach of contract. A hearing was held on the motion for summary judgment. After hearing the arguments of the attorneys, the trial court took the matter under advisement. The trial court later issued a written ruling indicating that it was granting summary judgment in favor of defendants.[3] In granting summary judgment, the trial court found that: (1) the services contract clearly violated the Act and was void in its entirety; (2) since the services contract was void in its entirety, no provision in the services contract was enforceable and defendants were entitled to judgment as a matter of law; and (3) even if the services contract was severable, summary judgment for defendants was still appropriate because Kepple could not prove damages since there was no prohibition against hiring and since the trial court had made specific findings that Cardiac Thoracic did not induce Hawley to tender her resignation. Kepple appealed the trial court's grant of summary judgment in favor of Cardiac Thoracic.

ANALYSIS

On appeal, Kepple argues that the trial court erred in granting summary judgment for Cardiac Thoracic on Kepple's complaint for breach of the services contract. Kepple concedes that the fee-sharing clause of the services contract violates the fee-sharing prohibition of the Act and is, therefore, an illegal and unenforceable provision. See 225 ILCS 60/22(A)(14) (West 2008); Vine Street Clinic v. HealthLink, Inc., 222 Ill. 2d 276, 292-93, 856 N.E.2d 422, 433-34 (2006); Center for Athletic Medicine, Ltd. v. Independent Medical Billers of Illinois, Inc., 383 Ill. App. 3d 104, 112-

---

[3]As noted previously, the record is not quite clear as to whether summary judgment was granted only as to Cardiac Thoracic or as to both Cardiac Thoracic and Hawley. Defendants' motion for summary judgment was made as to both claims. In response, however, Kepple declared that it was not pursuing its claim against Hawley and asked that the claim be voluntarily dismissed, if it had not been dismissed already. The trial court did not rule directly upon Kepple's request in that regard but rather merely granted "[d]efendants" motion for summary judgment.

5

13, 889 N.E.2d 750, 758-59 (2008) (agreement, which provided medical billing corporation with a percentage of physician corporation's revenues collected from payors, constituted prohibited fee sharing under the Act and was void). Kepple asserts, however, that the remaining provisions of the services contract, including the nonsolicitation clause, are severable and enforceable. Kepple asserts further that if this court determines that the services contract is severable, then Kepple should be given an opportunity to prove that it suffered damages from Cardiac Thoracic's solicitation of Hawley while she was employed by Kepple. Kepple notes that a mere finding that it is entitled to nominal damages for Cardiac Thoracic's breach of the services contract would entitle it to recover its attorney fees and costs of litigation as provided for in the indemnification clause of the services contract.

Cardiac Thoracic argues that the trial court's ruling is proper and should be affirmed. Cardiac Thoracic asserts that the services contract is not severable because the fee-sharing clause goes to the very essence of the contract. Cardiac Thoracic contends, therefore, that the entire services contract, including the nonsolicitation clause, is void and unenforceable. In case this court disagrees with Cardiac Thoracic on that point, Cardiac Thoracic also makes several alternative assertions in support of the trial court's grant of summary judgment. Cardiac Thoracic notes, however, that those alternative assertions should not be reached by this court if this court determines that the services contract is not severable.

The purpose of summary judgment is not to try a question of fact, but to determine if one exists. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 42-43, 809 N.E.2d 1248, 1256 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment

6

as a matter of law. 735 ILCS 5/2-1005(c) (West 2008); Adams, 211 Ill. 2d at 43, 809 N.E.2d at 1256. A trial court's grant of summary judgment is subject to de novo review on appeal (Adams, 211 Ill. 2d at 43, 809 N.E.2d at 1256) and may be affirmed on any basis supported by the record (Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co., 355 Ill. App. 3d 156, 163, 821 N.E.2d 706, 712 (2004)).

The current status of the law on severability of a contract, as set forth in section 184 of the Restatement (Second) of Contracts, is that when some portion of a contract is unenforceable as against public policy, "a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange." Restatement (Second) of Contracts §184(1), at 30 (1981); Kinkel v. Cingular Wireless, LLC, 223 Ill. 2d 1, 47, 857 N.E.2d 250, 277 (2006); People v. McNett, 361 Ill. App. 3d 444, 448, 837 N.E.2d 461, 465 (2005). The rationale for this rule is that " 'complex, multipart agreements on which there may have been significant reliance should not be void as a whole solely because some small part is against public policy' [citation] because, absent great inequality or misconduct involving an essential term of the contract, doing so would frustrate the contractual expectations of the parties." VG Marina Management Corp. v. Wiener, 378 Ill. App. 3d 887, 895-96, 882 N.E.2d 196, 204 (2008), quoting McNett, 361 Ill. App. 3d at 448, 837 N.E.2d at 465. Thus, the initial inquiry as to the issue of severability is whether the unenforceable term is an essential part of the contract. See McNett, 361 Ill. App. 3d at 448, 837 N.E.2d at 465-66. If the unenforceable term is an essential part of the contract, the contract is not severable and the entire contract is void. See Restatement (Second) of Contracts §184(1), Comment a, at 30 (1981); Kinkel, 223 Ill. 2d 1, 47, 857 N.E.2d at 277; McNett, 361 Ill. App. 3d at 448, 837 N.E.2d at 465. Whether the unenforceable term is an essential part of the

7

contract depends on the relative importance of the term in light of the entire agreement between the parties. Restatement (Second) of Contracts §184(1), Comment a, at 30 (1981); McNett, 361 Ill. App. 3d at 448, 837 N.E.2d at 465.

In the present case, there can be no dispute that the fee-sharing clause is an essential part of the services contract. As Cardiac Thoracic points out, the promise to perform medical billing and collection services for a percentage of the amount collected is the very essence of the services contract between Kepple and Cardiac Thoracic. Since the unenforceable fee-sharing clause is an essential part of the services contract, the remaining provisions of the services contract are not severable from that unenforceable provision and the entire contract, including the nonsolicitation clause, is void and unenforceable. See Restatement (Second) of Contracts §184(1), Comment a, at 30 (1981); Kinkel, 223 Ill. 2d 1, 47, 857 N.E.2d at 277; McNett, 361 Ill. App. 3d at 448, 837 N.E.2d at 465. Cardiac Thoracic, therefore, was clearly entitled to judgment as a matter of law on Kepple's claim for breach of the services contract. The trial court correctly granted summary judgment in favor of Cardiac Thoracic.

Having determined that the services contract is not severable and is void in its entirety, we need not address Kepple's arguments regarding its ability to prove damages or Cardiac Thoracic's alternative assertions in support of the trial court's grant of summary judgment. Furthermore, although Kepple argues that equity and justice demand the Kepple receive relief in this case as an innocent party, we note that Kepple did not make that argument in the trial court and that similar arguments have previously been rejected by the courts in cases of this nature. See O'Hara v. Ahlgren, Blumenfeld and Kempster, 127 Ill. 2d 333, 347-49, 537 N.E.2d 730, 737-38 (1989); TLC Laser Center, Inc. v. Midwest Eye Institute II, Ltd., 306 Ill. App. 3d 411, 428-30, 714 N.E.2d 45, 56-57 (1999); E&B Marketing Enterprises, Inc. v. Ryan, 209 Ill. App. 3d 626, 630, 568 N.E.2d 339,

8

342 (1991).

For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

O'BRIEN, P. J.  and LYTTON. J. concurring.